**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-4658

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ADOLPHUS BLACK,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, Chief District Judge. (CR-04-100)

Submitted: August 16, 2006          Decided: September 21, 2006

Before TRAXLER, SHEDD, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

W. Edward Riley, IV, BOONE, BEALE, COSBY & LONG, Richmond, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Brian Whisler, Michael C. Wallace, Sr., Assistant United States Attorneys, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Following a jury trial, Adolphus Black was convicted of possessing at least 200 but less than 300 grams of powder cocaine, in violation of 21 U.S.C. § 841 (2000) ("Count One"), being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (2000) ("Count Two"), and distributing fifty grams or more of crack cocaine, in violation of 21 U.S.C. § 841 ("Count Three"). He was sentenced to 360 months' imprisonment. Black challenges the district court's denial of his motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and his sentence. Finding no error, we affirm.

Taken in the light most favorable to the Government, the record establishes the following facts. In the fall of 2003 and early winter of 2004, the City of Richmond, Virginia, Police Department utilized a confidential informant, Darrell Woolridge ("Woolridge"), to purchase crack and powder cocaine from an individual later determined to be Black.[1] In February 2004, Detective Mark Dunn instructed Woolridge to order sixty-two grams of crack from Black. Prior to the sale, law enforcement began to surveil 1405 Ivy Mount Drive, Apt. A (the "apartment"), which law enforcement officers suspected Black used.

---

[1]At the beginning of the operation, law enforcement agents did not know Black's identity. However, Black's identity was established in February 2004, when another Richmond police officer stopped Black's vehicle, a 1990 Honda Civic, license plate number JHA-7482, and requested to see Black's driver's license.

Before departing for the controlled purchase, Det. Dunn thoroughly searched both Woolridge's vehicle and his person to ensure that he did not have any narcotics or money. Finding nothing, Det. Dunn gave Woolridge $2000 to purchase crack from Black, and followed Woolridge to the site of the buy; Det. Dunn never lost sight of Woolridge. After completing the transaction, Woolridge drove to the established meeting area, which was only a very short distance from the site of the buy. Det. Dunn followed Woolridge the entire time, and recovered approximately 59 grams of crack from him. Det. Dunn again searched Woolridge and the vehicle to ensure he had no other drugs or money.

On March 18, 2004, Woolridge, at the behest of police officials, called Black and ordered 500 grams of cocaine. Black informed Woolridge he was in New York, but that he would return to Richmond on March 22 with the drugs. Law enforcement officials accordingly staked out I-95 for Black's vehicle. After spotting Black's vehicle, law enforcement stopped it and arrested Black, the sole occupant therein. Det. Dunn testified that the man he arrested on March 22 was the same man he saw with Woolridge on February 11. At the time of his arrest, Black was carrying a cellular telephone; law enforcement officials dialed the number Woolridge used to order the narcotics, and Black's cell phone rang. Black also possessed a key to the apartment on Ivy Mount Road.

After arresting Black, Det. Dunn examined the vehicle and noticed a single black glove lying on the driver's side floor board, inside of which was a plastic baggie full of a white substance.  Forensic testing revealed the substance to be 248.6 grams of powder cocaine.  Law enforcement then obtained a warrant to search the apartment.  During the course of the search, officers recovered a scale, a single black glove, and a handgun from a small end table in the living room.  In a dresser in the bedroom, the officers found several documents bearing Black's name.

Temica Gay, Black's girlfriend at the time, testified that though she now resides there herself, she and Black shared the apartment between September 2003 and March 2004.  Ms. Gay explained that Black stayed at the apartment "whenever he came to Virginia." Because she gave Black a key to the apartment, he had complete access thereto, and was often at the apartment alone while Ms. Gay was at work.  Although they shared the bedroom at one point, Black had begun to sleep on the living room couch.  The end table from which the gun, scale, and glove were seized was located near the couch on which Black slept.  Ms. Gay testified that she recognized the black glove as being Black's, but that she had never seen the handgun.

Black first challenges the sufficiency of the Government's evidence supporting the guilty verdicts.  We review the denial of a Rule 29 motion de novo.  United States v. Alerre,

- 4 -

430 F.3d 681, 693 (4th Cir. 2005). Where, as here, the motion was based on a claim of insufficient evidence, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). We consider both circumstantial and direct evidence, "and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). Further, on appellate review, we "may not weigh the evidence or review the credibility of the witnesses." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997).

To establish a violation of 21 U.S.C. § 841(a)(1), the Government must prove beyond a reasonable doubt that Black: (1) knowingly; (2) possessed the controlled substance; (3) with the intent to distribute it. United States v. Burgos, 94 F.3d 849, 873 (4th Cir. 1996) (en banc). Possession may be actual or constructive. United States v. Rusher, 966 F.2d 868, 878 (4th Cir. 1992). "A person has constructive possession of a narcotic if he knows of its presence and has the power to exercise dominion and control over it." United States v. Schocket, 753 F.2d 336, 340 (4th Cir. 1985). Possession need not be exclusive but may be joint, and "may be established by direct or circumstantial evidence." Id.; United States v. Wright, 991 F.2d 1182, 1187 (4th Cir. 1993). This court has held that "where other circumstantial

evidence . . . is sufficiently probative, proximity to contraband coupled with inferred knowledge of its presence will support a finding of guilt on such charges." United States v. Laughman, 618 F.2d 1067, 1077 (4th Cir. 1980) (internal quotations and citation information omitted).  Intent to distribute may be inferred if the amount of drugs found exceeds an amount normally associated with personal consumption.  Wright, 991 F.2d at 1187.

To prove distribution, the Government had to show Black: (1) knowingly or intentionally distributed the controlled substance stated in the indictment, and (2) knew, at the time of distribution, that the substance distributed was a controlled substance.  United States v. Brower, 336 F.3d 274, 276 (4th Cir. 2003) (internal quotations and citation information omitted).  To distribute a controlled substance means to deliver it; delivery, in turn, is "the actual, constructive, or attempted transfer of a controlled substance . . . ." United States v. Washington, 41 F.3d 917, 919 (4th Cir. 1994) (internal quotations and citation information omitted).

Viewing the evidence in the light most favorable to the Government, a rational trier of fact could conclude that on March 22, Black possessed the cocaine with intent to distribute it, and that on February 11, Black distributed crack cocaine.  Therefore, we find the jury's unanimous verdicts were supported by substantial evidence.

Turning to Count Two, the felon-in-possession charge, we note that the parties stipulated to Black's prior felony conviction and that the handgun recovered traveled in interstate commerce. Thus, the only contested issue at trial was whether Black possessed the handgun. Possession may be actual, constructive, or joint.[2] United States v. Gallimore, 247 F.3d 134, 136-37 (4th Cir. 2001). "[T]o establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed." United States v. Blue, 957 F.2d 106, 107 (4th Cir. 1992) (quotations and citation information omitted). Possession may be established by circumstantial evidence. Schocket, 753 F.2d at 340. The discovery of contraband at the defendant's home "permits an inference of constructive possession." United States v. Shorter, 328 F.3d 167, 172 (4th Cir. 2003).

The Government's evidence was sufficient to support the jury's guilty verdict on this count. Constructive possession may be established by showing the defendant had ownership or control over the premises on which contraband is discovered. United States v. Hines, 39 F.3d 74, 78 (4th Cir. 1995), vacated on other grounds, 516 U.S. 1156 (1996); United States v. Kitchen, 57 F.3d 516, 521 (7th Cir. 1995). Law enforcement officials discovered a handgun in

---

[2]The Government did not attempt to prove Black actually possessed the handgun.

the Ivy Mount Road apartment. Ms. Gay testified that she lived in the apartment, that she gave Black a key to the apartment, that Black had unrestricted access to the apartment, and that she never saw the handgun before. Ms. Gay further testified that Black lived with her intermittently between September 2003 and March 2004, that Black stayed in the apartment "every time" he came to Virginia, and that he was alone in the apartment while she was at work. Trial testimony further established that the apartment contained several papers — including a traffic citation — bearing Black's name. See Shorter, 328 F.3d at 171 (papers found in Shorter's home "sufficient to link Shorter to the residence"). Considering that Black had unfettered access to the apartment, kept personal papers there, and inhabited the apartment with the latitude of a resident — albeit a part-time resident — the jury could have reasonably concluded Black had sufficient dominion and control over the apartment to support a finding of constructive possession.

Alternatively, the jury could have reasonably found sufficient evidence of constructive possession in light of the Government's evidence of Black's dominion and control over the handgun itself. Ms. Gay testified that though she and Black had, for a time, slept together in the bedroom, he began sleeping on the couch. Law enforcement recovered the handgun from the small end table located adjacent to the couch on which Black slept. The close proximity between the handgun and the couch, coupled with Ms.

Gay's testimony that she had never seen the firearm before, supports the guilty verdict.  The Government's evidence of Black's constructive possession of the handgun is bolstered by the fact that one of Black's black gloves was discovered on this same end table, the match to which was recovered from Black's vehicle on the night of his arrest.  Ms. Gay testified she had seen Black with a pair of black gloves and that she had seen a black glove on the end table.  Under either theory, the Government's evidence was sufficient to support the guilty verdict.

Lastly, Black argues the district court improperly considered his underlying state court convictions in designating him a career offender and sentencing him pursuant to the Armed Career Criminal Act.  Black contends that, because the record does not conclusively prove that his Sixth Amendment right to counsel was observed during the course of these underlying proceedings, the district court should not have considered those convictions as predicate offenses for enhancement purposes.

Black's argument lacks merit.  There is a presumption of regularity afforded final criminal judgments.  Parke v. Raley, 506 U.S. 20, 29 (1992).  A defendant who challenges prior convictions used to enhance his sentence in a later offense bears the burden of showing that the prior convictions were invalid.  United States v. Jones, 977 F.2d 105, 109-11 (4th Cir. 1992).  Black offers nothing

more than a conclusory assertion to support his claim; absent more, Black's claim fails.

For the foregoing reasons, we affirm Black's convictions and sentence.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED