**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-7442

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SPENCER PETERS, a/k/a Smoke,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Robert E. Payne, Senior District Judge. (3:08-cr-00186-REP-RCY-2)

Argued: September 23, 2016     Decided: December 12, 2016

Before GREGORY, Chief Judge, and WILKINSON and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the majority opinion, in which Judge Diaz joined. Chief Judge Gregory wrote a dissenting opinion.

**ARGUED**: Caroline Swift Platt, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Peter Sinclair Duffey, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF**: Geremy C. Kamens, Federal Public Defender, Alexandria, Virginia, Robert J. Wagner, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. Dana J. Boente, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

WILKINSON, Circuit Judge:

Spencer Peters appeals the district court's denial of his motion for a sentence reduction under 18 U.S.C. § 3582(c)(2). A jury convicted Peters of both conspiracy to distribute 50 grams or more of cocaine base, or "crack," and a related firearms conspiracy. Given the quantity of cocaine base attributable to Peters, the district court applied the maximum base offense level for drug-trafficking crimes under the Sentencing Guidelines. Peters ultimately received 480 months of imprisonment.

After Guidelines Amendment 782 increased the minimum quantity of cocaine base associated with the maximum base offense level to 25.2 kilograms, Peters moved for a sentence reduction under § 3582(c)(2). The district court denied the motion, concluding that "the quantity of controlled substance in the offense of conviction renders the defendant ineligible for a reduction of sentence." J.A. 748. On appeal, Peters argues that the district court erred by failing to explain its eligibility determination in sufficient detail and by finding him responsible for at least 25.2 kilograms of cocaine base. For the reasons that follow, we affirm.

I.

A.

2

We first set forth the general statutory framework for deciding sentence reductions. Ordinarily, of course, a sentence is final. 18 U.S.C. § 3582(c) (2012). Recognizing a discrete exception to the general rule of sentencing finality, section 3582(c)(2) allows reductions to a defendant's term of imprisonment to give the defendant "the benefit of later enacted adjustments to the judgments reflected in the Guidelines." Dillon v. United States, 560 U.S. 817, 828 (2010); see § 3582(c)(2). Section 3582(c)(2), the Supreme Court has explained, permits "only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." Dillon, 560 U.S. at 826. This court has noted that § 3582(c)(2) does not allow "a do-over of an original sentencing proceeding," in which the defendant is "cloaked in rights mandated by statutory law and the Constitution." United States v. Legree, 205 F.3d 724, 730 (4th Cir. 2000) (quoting United States v. Tidwell, 178 F.3d 946, 949 (7th Cir. 1999)).

To decide whether to reduce a defendant's sentence under § 3582(c)(2), courts conduct a "two-step inquiry." Dillon, 560 U.S. at 826; United States v. Williams, 808 F.3d 253, 257 (4th Cir. 2015). First, a court must determine the defendant's eligibility. Section 3582(c)(2) permits a reduction only if (1) the defendant's "term of imprisonment [was] based on a sentencing range that has subsequently been lowered by the

3

Sentencing Commission," and (2) the reduction "is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(2). Second, the court may grant the authorized reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable." Id.; see 18 U.S.C. § 3553(a) (2012). The ultimate decision of "[w]hether to reduce a sentence and to what extent" is committed to the district court's discretion. United States v. Smalls, 720 F.3d 193, 195 (4th Cir. 2013); see Legree, 205 F.3d at 727.

The Guidelines policy statement implementing the statute, Guidelines § 1B1.10, spells out the process for determining whether an amendment lowers a defendant's sentencing range. See U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.10 (2014). Courts "shall substitute . . . the amendments . . . for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." Id. § 1B1.10(b)(1). Section 1B1.10 also functions as a gatekeeper, specifying which Guidelines amendments apply retroactively and thus may give rise to a sentence reduction under § 3582(c)(2). Id. § 1B1.10(a)(2)(A), (d).

B.

Motions under § 3582(c)(2) must be based on an amendment to the Guidelines. See id. § 1B1.10(a)(1). Following the Fair

4

Sentencing Act of 2010, the Sentencing Commission amended the Guidelines with respect to cocaine base offenses.

For drug-trafficking crimes in general, a defendant's base offense level depends on the type of drug and the amount attributable to the defendant. See U.S.S.G. § 2D1.1(a)(5), (c) (2015). The Drug Quantity Table specifies particular base offense levels for quantity ranges of various drugs, with a maximum of 38 levels. Id. § 2D1.1(c).

The Sentencing Commission revised the Drug Quantity Table after Congress enacted the Fair Sentencing Act. To alleviate the severe sentencing disparity between crack and powder cocaine, the Act reduced the statutory penalties for cocaine base offenses. Fair Sentencing Act of 2010 § 2, Pub. L. No. 111-220, 124 Stat. 2372, 2372 (codified at 21 U.S.C. § 841 (2012)). Accordingly, Guidelines Amendments 750 and 782 lowered the base offense levels assigned to different amounts of cocaine base. The Commission made both amendments retroactive. See U.S.S.G. § 1B1.10(d).

Amendment 750 increased the minimum quantity of cocaine base necessary to trigger the maximum base offense level from 4.5 to 8.4 kilograms. U.S.S.G. app. C, amend. 750 (effective Nov. 1, 2011). Amendment 782 again raised the requisite amount of cocaine base from 8.4 to 25.2 kilograms. U.S.S.G. supp. app. C, amend. 782 (effective Nov. 1, 2014).

For defendants responsible for at least 25.2 kilograms of cocaine base, Amendment 782 has no effect; the maximum base offense level (38 levels) still applies. Defendants accountable for more than 8.4 but less than 25.2 kilograms of the drug, however, will receive a base offense level of 36 levels.

## II.

The appellant Spencer Peters was indicted in 2008 along with his brother Terrence Peters and their associate Clifford Noel.[1] The two-count superseding indictment charged them with conspiring to distribute 50 grams or more of cocaine base (Count One) as well as conspiring to possess firearms in furtherance of a drug-trafficking offense (Count Two). The indictment alleged that these conspiracies lasted nearly a decade, beginning around January 2000 and ending around February 2008.

At trial, the government presented numerous witnesses, including former confederates, law enforcement officials, and individuals who purchased cocaine base from Peters and members of his organization. The evidence indicated that Peters was second only to his brother, Terrence, in the conspiracy's multi-layer hierarchy and led the group when Terrence was absent. Although Peters was incarcerated for a period in 2003 and again from May 2005 onward, witnesses explained that Peters stayed in

---

[1] We refer to the appellant Spencer Peters as "Peters." When discussing his brother, we use "Terrence" or "Terrence Peters."

6

contact with members of the conspiracy while in prison and attempted to recruit a fellow inmate.

According to the government's witnesses, members of the crack-distribution ring, including Peters, regularly traveled from Richmond, Virginia to New York to purchase cocaine hydrochloride, or "powder cocaine." They usually bought one to two kilograms per trip. The group used two vehicles for these missions. Peters transported the drugs back to Richmond in his car, which was specially outfitted with hidden compartments. Terrence drove ahead in a separate vehicle to look out for police and warn his brother. Upon returning to Richmond, Terrence converted the powder cocaine into crack.

The group distributed crack through multiple channels, using a dedicated house as home base. Witnesses testified that the traffickers, including Peters, sold cocaine base to individual users and drug dealers, mostly for money but sometimes for firearms. One witness estimated that he had purchased a total of 1 to 1.5 kilograms of crack from the group. Peters also supplied his subordinates with cocaine base to sell on consignment. At one point, the conspirators began working in shifts, retailing crack 24/7 from their house and serving 40 to 50 customers on an average day. The group later shifted to a wholesale model in which it primarily sold cocaine base to mid-level dealers.

The jury convicted Peters, his brother, and Noel in 2009. At sentencing, the government argued that "a highly conservative estimate of the attributable drug weight in this case exceeds 150 kilograms." J.A. 596. At Terrence's sentencing hearing, which directly preceded Spencer's, the district court observed: "The Government's estimate of 150 kilograms is not off the mark . . . based on the evidence in the case of which there was ample amount and corroborated in every respect." J.A. 630.

Under the Drug Quantity Table in effect when Peters was sentenced, defendants responsible for 4.5 or more kilograms of cocaine base received the maximum, 38-level base offense level. U.S.S.G. § 2D1.1(c) (2008). Peters's presentence investigation report (PSR) attributed at least 4.5 kilograms of crack to him. The PSR summarized the key facts supporting this finding:

> Testimony showed that the members were bringing 1 to 2 kilograms of cocaine hydrochloride from New York to Richmond on a weekly basis. While there were time periods that no drugs were brought from New York due to members being jailed or out of town, the extended period of the conspiracy makes it clear that the total amount of cocaine base trafficked by the conspiracy members would be well in excess of 4.5 kilograms.

J.A. 756. The district court adopted the PSR.

The PSR also recommended that Peters receive a 2-level enhancement for possessing a firearm and a 3-level enhancement as a manager or supervisor of a drug conspiracy involving at least five participants. At Peters's sentencing hearing, the

8

district court characterized Peters as the "acting CEO when the CEO was gone." J.A. 644. The court noted that Peters "supervised the business [and] the subordinates" and "helped recruit new members to the organization." Id.

Peters's adjusted offense level of 43 and his criminal history category of I yielded an advisory Guidelines sentencing range of life in prison. Because of a prior drug offense, his statutory mandatory minimum sentence was 20 years.

Attuned to Peters's individual role in the offense, the district court concluded that "[a] sentence of life imprisonment is greater than necessary to effectuate the goals set forth in Sec. 3553(a)." J.A. 787. The court varied downward and ultimately sentenced Peters to 480 months of imprisonment for Count One and 240 months of imprisonment for Count Two, to run concurrently. This court upheld the conviction and sentence. United States v. Peters, 392 F. App'x 161 (4th Cir. 2010).

In 2013, Peters filed his first motion for a sentence reduction under § 3582(c)(2). He argued that Amendment 750 lowered his sentencing range by raising the crack quantity threshold for the maximum base offense level to 8.4 kilograms. The district court denied Peters's motion, stating: "The quantity of controlled substance in the offense of conviction renders the defendant ineligible for a sentence reduction, but, even if he were eligible, the Court would decline to [reduce his

9

sentence] because . . . the originally imposed sentence is appropriate." J.A. 717-18. This court affirmed. United States v. Peters, 576 F. App'x 209 (4th Cir. 2014).

In 2015, Peters again sought a sentence reduction under § 3582(c)(2), this time relying on Amendment 782. The Probation Office recommended that the district court find Peters ineligible because Peters was responsible for more than 25.2 kilograms of cocaine base. As before, the district court denied the motion:

> Having considered the defendant's [motion], the Government's response thereto and the reply, the record, the presentence report, the [recommendation of] the Probation Office and all other applicable requirements of law, it is hereby ORDERED that the defendant's [motion] is denied because the quantity of controlled substance in the offense of conviction renders the defendant ineligible for a reduction of sentence under the retroactive crack amendment, Amendment 782.

J.A. 748. Because the district court found Peters ineligible at the first step of the § 3582(c)(2) inquiry, the court did not reach the discretionary second step.

This appeal followed.

III.

Peters's eligibility for a sentence reduction turns solely on whether he is responsible for at least 25.2 kilograms of cocaine base. If so, he still receives the maximum base offense level, and Amendment 782 does not alter his Guidelines

10

sentencing range--thus precluding him from a sentence reduction under § 3582(c)(2).

Peters challenges the district court's denial of his motion on two grounds. First, Peters asserts that the district court did not adequately explain why it found him ineligible. Second, he argues that any finding attributing 25.2 or more kilograms of cocaine base to him is clearly erroneous.

We review a district court's decision to grant or deny a sentence-reduction motion under § 3582(c)(2) for abuse of discretion. Smalls, 720 F.3d at 195. We review the district court's ruling as to the scope of its legal authority under § 3582(c)(2) de novo. United States v. Mann, 709 F.3d 301, 304 (4th Cir. 2013). Finally, we review factual determinations, including the attributable drug quantity, for clear error. Id.

A.

At the outset, we note that district courts may make additional findings on the drug quantities attributable to defendants in § 3582(c)(2) proceedings. Such findings must be supported by the record and consistent with earlier findings.

The eligibility inquiry contemplated by § 3582(c)(2) may even require the court to supplement its findings in some circumstances. Section 3582(c)(2) instructs courts to determine whether a retroactive Guidelines amendment lowers a defendant's sentencing range. For an amendment to the Drug Quantity Table,

11

this analysis hinges on whether the drug quantity attributable to the defendant exceeds or falls below the revised quantity threshold. This inquiry is straightforward where the sentencing court found the defendant responsible for a precise amount (such as "X kilograms"). But sentencing courts sometimes attribute a range of quantities (such as "at least X kilograms") to defendants. In these circumstances, a court deciding a § 3582(c)(2) motion may need to identify the attributable drug quantity with more precision to compare it against the new quantity threshold.

In United States v. Mann, we declined to address the question of whether district courts may supplement their findings on attributable drug quantities. Id. at 306. We noted, however, that "our sister circuits agree that additional findings lie within a sentencing court's discretion." Id. The Seventh Circuit, for example, held that

> nothing prevents the court from making new findings that are supported by the record and not inconsistent with the findings made in the original sentencing determination. Indeed, new findings may be necessary where, as here, the retroactive amendment to the guidelines altered the relevant drug-quantity thresholds for determining the defendant's base offense level.

United States v. Hall, 600 F.3d 872, 876 (7th Cir. 2010). The Eleventh Circuit also elaborated on the power of courts to make additional findings consistent with earlier ones: "[I]f a

12

district court found during the original sentence proceeding that 'at least X kilograms' were attributable to the defendant, it may not find . . . that 'less than X kilograms' were attributable; it may, however, find attributable X kilograms, or 2X kilograms, or 10X kilograms." United States v. Hamilton, 715 F.3d 328, 340 (11th Cir. 2013).

Other courts of appeals have reached the same conclusion. See United States v. Wyche, 741 F.3d 1284, 1293 (D.C. Cir. 2014) ("If the original sentencing court failed to make a specific drug-quantity calculation, the resentencing court may have to make its own quantity finding in order to determine the defendant's guideline range."); United States v. Battle, 706 F.3d 1313, 1319 (10th Cir. 2013) ("[A] district court may look to its previous findings . . . to make supplemental calculations of drug quantity at resentencing if such calculations are necessary . . . ."); United States v. Moore, 706 F.3d 926, 929 (8th Cir. 2013) ("[Section] 1B1.10(b)(1) not only permits, but may often require, district courts to make findings necessary to resolve § 3582(c)(2) motions."); United States v. Moore, 582 F.3d 641, 646 (6th Cir. 2009) ("We do not agree . . . that the district court's previous determination of 'more than 1.5 kilograms' means that it cannot also find more than 4.5 kilograms.").

13

We now join our sister circuits in holding that a district court may make additional findings on the drug quantity attributable to a defendant. Such findings cannot contradict earlier ones and must be supported by the record.

Here, the district court properly supplemented its earlier findings on the quantity of cocaine base attributable to Peters. The court initially attributed at least 4.5 kilograms of cocaine base to Peters. The court later found Peters ineligible for a sentence reduction based on Amendment 750, which benefited only defendants responsible for less than 8.4 kilograms of crack. Amendment 782 would lower Peters's base offense level (and thus his sentencing range) only if he were accountable for less than 25.2 kilograms of cocaine base. It would have been impossible for the district court to determine Peters's eligibility for a reduction without supplementing its previous attribution of at least 8.4 kilograms of cocaine base. In denying Peters's motion on eligibility grounds, the court implicitly found him responsible for at least 25.2 kilograms of cocaine base. This finding was consistent with the earlier ones and, for the reasons that follow, was not clearly erroneous.

## B.

The question of "whether a court ruling on a § 3582(c)(2) motion must provide an individualized explanation is one of law that we consider de novo." Smalls, 720 F.3d at 195. Peters

14

argues that the district court did not adequately explain why he was ineligible. Specifically, Peters contends that the court erred by failing to make "specific findings of fact showing how it concluded that [he] [wa]s ineligible due to drug quantity," Br. of Appellant at 8, and by failing to specify "the scope of the relevant conduct for which he can be held accountable," id. at 21.

As a threshold matter, there can be no dispute that the district court found Peters ineligible because he was responsible for at least 25.2 kilograms of cocaine base. The court explained that "the quantity of controlled substance in the offense of conviction renders the defendant ineligible." J.A. 748. Although the court did not expressly attribute 25.2 kilograms of cocaine base to Peters, his eligibility turned solely on whether he was responsible for at least that amount. See Br. of Appellant at 8. Contrary to Peters's assertion, logic and common sense indicate the "basis [on which] the district court concluded that Mr. Peters was ineligible." Reply Br. of Appellant at 6-7.

Moreover the "limited nature of § 3582(c)(2) proceedings," Dillon, 560 U.S. at 827, contrasted with plenary sentencing or resentencing proceedings, gives district courts more leeway in articulating reasons for granting or denying motions under § 3582(c)(2). In an ordinary sentencing proceeding, the district

15

court "must place on the record an 'individualized assessment' based on the particular facts of the case before it." United States v. Carter, 564 F.3d 325, 330 (4th Cir. 2009) (quoting Gall v. United States, 552 U.S. 38, 50 (2007)). The court must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Gall, 552 U.S. at 50.

For motions under § 3582(c)(2), however, "we presume a district court . . . has considered the 18 U.S.C. § 3553(a) factors [under the discretionary step] and other pertinent matters before it." Smalls, 720 F.3d at 195-96. As we explained in Legree, "[a] court need not engage in ritualistic incantation in order to establish its consideration of a legal issue. It is sufficient if . . . the district court rules on issues that have been fully presented for determination. Consideration is implicit in the court's ultimate ruling." Legree, 205 F.3d at 728 (quoting United States v. Davis, 53 F.3d 638, 642 (4th Cir. 1995)). "[I]n the absence of evidence a court neglected to consider relevant factors," we confirmed in Smalls, "the court does not err in failing to provide a full explanation for its § 3582(c)(2) decision." Smalls, 720 F.3d at 196.

Like our precedents, the text of § 3582(c)(2) reflects the "fundamental differences between sentencing and sentence-modification proceedings." Dillon, 560 U.S. at 830. Section

16

3582(c)(2) directs courts to § 3553(a) but not § 3553(c), which requires courts to give reasons for imposing particular sentences "at the time of sentencing." § 3553(c).

In short, Legree and Smalls control here. The defendants in those cases argued that the district courts erred by failing to "articulate on the record the precise reasons" for their conclusions. Legree, 205 F.3d at 727. So did the defendant in United States v. Stewart. 595 F.3d 197, 199 n.2 (4th Cir. 2010). But "[w]e held directly to the contrary" in Legree and Smalls, id., and we must do so here.

The district court's order denying Peters's motion contained more detail than the ones we upheld in Legree and Smalls. The district court in Legree "provided no individualized explanation in support of its decision." Smalls, 720 F.3d at 196. Its order stated: "[The] Amendment . . . does not create a mandatory right to reduction of sentence for defendant. On consideration of the matter, this court concludes that defendant's sentence was correct and that no reduction is appropriate." Order, United States v. Legree, No. 5:93-cr-92-PMD (D.S.C. Sept. 30, 1997). The defendant in Smalls unsuccessfully appealed the district court's decision to grant a limited reduction. Smalls, 720 F.3d at 194-95. That court's order declared, "In granting this motion, the court has considered the

factors set forth in 18 U.S.C. § 3553(a)." Id. at 195 (quoting the district court).

Here the district court clarified that it denied Peters's motion because he was ineligible. The court also noted the factual and legal sources on which it relied: "the defendant's [motion], the Government's response thereto and the reply, the record, the presentence report, the [recommendation of] the Probation Office and all other applicable requirements of law." J.A. 748.

Peters argues that the presumption we endorsed in Legree and reiterated in Smalls applies only to the second, discretionary step of the § 3582(c)(2) inquiry. We can discern in Legree and Smalls no such limitation. These decisions were grounded in the nature of a § 3582(c)(2) proceeding, not in some supposed distinction between the first and second steps of the inquiry. See Smalls, 720 F.3d at 198.

Peters offers no evidence to rebut the presumption that the district court considered the relevant facts and legal principles. Where a full sentencing has been held and the defendants' objections raised and entertained, there is simply no reason to replay the ground. Though it is not required, it will often be the case that the judge hearing the § 3582(c)(2) motion will have prior familiarity with the defendant and may even have conducted the original sentencing. See Smalls, 720

18

F.3d at 196; Legree, 205 F.3d at 729. Here, for example, the district court was "intimate[ly] familiar[] with [Peters's] case." Legree, 205 F.3d at 729. The court oversaw the trial, the sentencing, and Peter's prior motions under 28 U.S.C. § 2255 and § 3582(c)(2). It cannot be claimed that Peters was procedurally shortchanged or his motion decided by a court unfamiliar with the depth of his involvement in the conspiracy.

Of course, it is always permissible for district courts, in resolving motions under § 3582(c)(2), to offer whatever explanation they find fitting. A fuller explanation is generally preferable to an abbreviated one. But, under this court's clear precedents, "[n]o greater specificity was required." Id. at 729 n.3.

C.

Finally, the district court's finding that Peters was responsible for at least 25.2 kilograms of cocaine base was not clearly erroneous. See Mann, 709 F.3d at 304. Under Guidelines § 1B1.3, a defendant's relevant conduct determines which base offense level applies when the Guidelines specify more than one. U.S.S.G. § 1B1.3(a) (2015). Courts must assess relevant conduct on an individual basis. Id. For drug conspiracies, a defendant is accountable for

> all quantities of contraband with which he was
> directly involved and . . . all quantities of
> contraband that were involved in transactions carried

19

out by other participants, if those transactions were within the scope of, and in furtherance of, the jointly undertaken criminal activity and were reasonably foreseeable in connection with that criminal activity.

§ 1B1.3 cmt. n.3(D) (describing how Guidelines § 1B1.3(a)(1) applies to "offenses involving contraband (including controlled substances)").

The district court did not commit clear error in finding Peters responsible for at least 25.2 kilograms of cocaine base under Guidelines § 1B1.3. Peters helped lead a criminal enterprise that manufactured and sold high volumes of crack for the better part of a decade. The district court's finding was not a close call.

Peters received a 3-level enhancement for serving in the organization as his brother's second-in-command. The record indicates that Peters was intimately familiar with the group's business model and deeply involved in its day-to-day operations. He was responsible for transporting the cocaine hydrochloride from New York back to Richmond. Peters dispensed crack to his fellow coconspirators, or "what he called his soldiers," J.A. 393, for them to sell on consignment. He sold crack himself. He also helped ensure the business's security by procuring firearms. And while Terrence was incarcerated, Peters took up the mantle of leadership, making major decisions and managing the group's affairs.

The PSR captured the full sweep of the conspiracy's trafficking, which lasted from January 2000 to February 2008: "Testimony showed that the members were bringing 1 to 2 kilograms of cocaine hydrochloride from New York to Richmond on a weekly basis." J.A. 756. At Terrence's sentencing hearing, the district court noted that evidence of "the vastness of this operation" was "overwhelming." J.A. 630. The court also observed that the government's 150-kilogram estimate was "not off the mark" given the "ample" evidence that was "corroborated in every respect." Id.

Peters argues that he is not accountable for "any drug transactions" that occurred while he was incarcerated. Br. of Appellant at 24. But witnesses testified that while in prison, Peters kept in touch with members of the conspiracy and even arranged to bring a fellow inmate into the business.

In light of Peters's leadership role in this high-volume crack-distribution conspiracy, it was hardly inappropriate for the district court to find Peters responsible for at least 25.2 kilograms of cocaine base. Even excluding the periods during which Peters was incarcerated, we still cannot say that the district court committed clear error. Under Guidelines § 1B1.3, Peters may be held accountable for the quantity of cocaine base "with which he was directly involved" plus the quantity involved in transactions carried out by his coconspirators that were

21

"within the scope of, and in furtherance of" his drug-trafficking scheme and were "reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3 cmt. n.3(D); see id. § 1B1.3(a)(1). Applying this standard, the district court's finding that the total quantity of cocaine base attributable to Peters exceeded 25.2 kilograms did not approach clear error. The court's conclusion that Peters was not eligible for a § 3582(c)(2) sentence reduction is accordingly affirmed.[2]

AFFIRMED

[2] Our distinguished colleague in dissent does not discuss or dispute any of the above facts or explain what purpose a remand here could possibly serve.

GREGORY, Chief Judge, dissenting:

I agree with the majority holding that a district court considering a motion under 18 U.S.C. § 3582(c)(2) may make additional findings on the drug quantity attributable to a defendant so long as the findings do not contradict earlier ones and are supported by the record. I disagree with the conclusion that the district court's ruling that Peters is ineligible for a sentence reduction, without any individualized consideration of his relevant conduct, suffices as an additional drug quantity finding in this case.

Courts have a general duty to explain their reasoning. In the sentencing context, the court "should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009) (citations omitted). Citing Dillon v. United States, the majority highlights the "limited nature of § 3582(c)(2) proceedings" in comparison to ordinary sentencing proceedings. 560 U.S. 817, 825, 827 (2010) (explaining that § 3582(c)(2) "does not authorize a sentencing or resentencing proceeding"). But nothing in Dillon suggests that we should abrogate district courts' general responsibility to provide some individualized legal reasoning.

Indeed, the rationale for requiring courts to explain their sentencing decisions applies equally to § 3582(c) proceedings. Explaining sentencing decisions "not only 'allow[s] for meaningful appellate review' but it also 'promote[s] the perception of fair sentencing.'" Carter, 564 F.3d at 328 (citing Gall v. United States, 52 U.S. 38, 50 (2007)). This is especially true for sentence reductions made pursuant to a revised crack-cocaine ratio, which was enacted to correct structural flaws in the law, rather than to inure to the benefit of any single defendant. See, e.g., Kimbrough v. United States, 552 U.S. 85, 98 (2007) ("[T]he severe sentences required by the [prior] 100-to-1 ratio [we]re imposed 'primarily upon black offenders.'"). Amendment 782 to the United States Sentencing Guidelines ("U.S.S.G.") generally reduces by two levels the base offense levels assigned to the drug quantities described in U.S.S.G. § 2D1.1(c) (U.S. Sentencing Comm'n Manual 2008). In cases where defendants seek redress from a flawed sentencing scheme, it would be even more valuable for the court to explain why that defendant was not eligible.

Nevertheless, the majority holds that district courts need not explain their reasoning with any particularity in sentencing modifications. Relying on this Court's holdings in United States v. Legree, 205 F.3d 724 (4th Cir. 2000), and United States v. Smalls, 720 F.3d 193 (4th Cir. 2013), the majority

24

presumes that the district court's ruling that Peters is ineligible for a sentence reduction implicitly found that he was individually responsible for at least 25.2 kilograms of cocaine base.* Unlike the case before us, <u>Legree</u> and <u>Smalls</u> involved challenges to the district courts' consideration of the 18 U.S.C. § 3553(a) factors—the second, discretionary step of the § 3582(c)(2) inquiry.

The majority should be reluctant to apply such a broad presumption in cases where the defendant challenges the district court's consideration of his eligibility for a sentence reduction—the first step of the inquiry. See <u>Dillon</u>, 560 U.S. at 826 ("A court must first determine that a reduction is consistent with [U.S.S.G. §] 1B1.10 before it may consider whether the authorized reduction is warranted . . . according to the factors set forth in § 3553(a)."). A judge is required to "explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." <u>Gall</u>, 552 U.S. at 46. Even in cases challenging the district court's consideration of the § 3553(a) factors, like in <u>Legree</u> and <u>Smalls</u>, we cautioned that

---

\* At the time Peters was sentenced, he received a base offense level of 38, which applied where the offense involved at least 4.5 kilograms of cocaine base. U.S.S.G. § 2D1.1(c)(1). Under Amendment 782, a base offense level of 38 applies where the offense involved at least 25.2 kilograms of cocaine base. <u>Id.</u>

25

"a talismanic recitation of the § 3553(a) factors without application to the defendant being sentenced does not demonstrate reasoned decisionmaking or provide an adequate basis for appellate review." Carter, 564 F.3d at 329 (citing United States v. Stephens, 549 F.3d 459, 466–67 (6th Cir. 2008)). The same must undoubtedly be true in cases where the district court must evaluate the defendant's eligibility for a reduction.

Determining a defendant's eligibility requires the court to calculate the drug quantity attributable to the defendant, see U.S.S.G. § 2D1.1; U.S.S.G. App. C, Amend. 782 (effective Nov. 1, 2014), which includes the quantities associated with the defendant's offense of conviction and any relevant conduct, United States v. Flores-Alvarado, 779 F.3d 250, 255–56 (4th Cir. 2015), as amended (Mar. 11, 2015). The drug amount is "the factual predicate necessary for sentencing." United States v. Collins, 415 F.3d 304, 313 (4th Cir. 2005). In Collins, we held that a defendant found guilty of a drug conspiracy should receive an individualized sentence, where the district court considers the distribution of the amount of drugs "attributable to him" as opposed to the amount distributed by the entire conspiracy. Id. at 312. It seems axiomatic that a court considering a § 3582(c)(2) motion—particularly in a case where there is an obvious need for additional drug-quantity fact finding—must provide some individualized explanation

26

demonstrating its consideration of the defendant's relevant conduct. To hold that the district court made such an important factual determination by simply finding Peters ineligible for the reduction cuts against courts' embedded responsibility to explain their decisions. I would therefore vacate and remand with instructions to the district court to provide a fuller explanation of its drug-quantity calculation.