M. Hannah Lauck, United States District Judge
This matter comes before the Court on Defendant Adolphus Black's Motion to Reduce Sentence Pursuant to the First Step Act of 2018 (the "Motion"). (ECF No. 154.) Black asserts that the First Step Act entitles him to relief because he committed a covered offense before August 3, 2010. (Mot. 1-3.) The United States responded, recognizing that the First Step Act applies to Black but disputing the extent of relief Black seeks in the Motion (the "Opposition"). (Opp'n 1, ECF No. 157.) Black replied. (ECF No. 159.) The Motion is ripe for disposition. For the reasons articulated below, the Court will grant in part and deny in part the Motion.
I. Background
In 2004, a jury convicted Black of three counts: (1) possessing at least 200 grams but less than 300 grams of powder cocaine, in violation of 21 U.S.C. § 841 (2000) ("Count One"); (2) being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (2000) ("Count Two"); and, (3) distributing fifty grams or more of crack cocaine, in violation of 21 U.S.C. § 841 (2000) ("Count Three"). (Mot. 3; PSR ¶¶ 5-6, ECF No. 158-1.)
The presentence report prepared following these convictions attributed to Black 249.8 grams of powder cocaine for Count One and 59.5 grams of cocaine base for Count Three. (PSR ¶¶ 5-6.) The presentence report then organized the three counts into two groups of "closely related counts" before tabulating the combined adjusted offense level. See U.S. SENTENCING GUIDELINES MANUAL ("USSG") ch.3, pt. D, introductory cmt. (U.S. Sentencing Comm'n 2004). For Counts One and Three (the first group), the presentence report determined an adjusted offense level of 32 based on the quantity of drugs involved in the offenses. (PSR Wkst A.) For Count Two (the second group), the presentence report calculated an offense level of 24, pursuant to USSG § 2K2.1(a)(2), because Black possessed a firearm after sustaining two felony convictions for crimes of violence. (PSR Wkst A, 2.) Combining the offense levels applicable to each group resulted in a combined adjusted offense level of 33. (PSR Wkst B).
The presentence report also classified Black as a career offender based on his convictions for New York robbery offenses *685 that occurred in September 1987 when he was 18 years old. The presentence report specified that Black pled guilty to three robbery offenses that occurred over a five-day period and that Black began serving his sentence for each of those offenses on April 11, 1989. (PSR ¶¶ 18-19, 35, Wkst C, D.) These predicate robbery offenses occurred without an intervening arrest. (Compare PSR ¶¶ 18-19 (listing arrest dates as 9-15-87 and 12-3-87) with Wkst C, 3 (noting robbery offenses "had the same arrest and conviction dates").)[1] Using the career offender designation, the presentence report calculated a total offense level of 37 and a criminal history category VI, resulting in a sentencing Guidelines range of 360 months to life.[2] (PSR Wkst D.) Count One, however, carried a statutory maximum sentence of 240 months. (Id. )
Although Black objected to his status as a career offender and argued that his criminal history score substantially overrepresented the seriousness of his criminal history, the Court overruled his objection.[3] (PSR B-1-B-2; Sent Tr. 8-9, ECF No. 159-1.) After adopting the Guidelines as presented in the presentence report, the Court imposed a sentence of 360 months for Counts Two and Three, at the low end of the Guidelines range, and the statutory maximum sentence of 240 months for Count One. (Sent. Tr. 14.) The Court ordered these terms of imprisonment to run concurrently. (Id. ) The Court also imposed a three-year supervised-release term for Counts One and Two and a five-year supervised-release term for Count Three, running concurrently. (Id. ) The United States Court of Appeals for the Fourth Circuit affirmed Black's convictions and sentences. United States v. Black , 200 Fed. App'x 249, 250-51 (4th Cir. 2006). Black unsuccessfully sought postconviction *686 relief. (See ECF Nos. 91, 92, 114, 115, 147, 148.)
II. Legal Framework under the First Step Act
Following Black's conviction, Congress passed, and the President enacted, the Fair Sentencing Act of 2010 (the "Fair Sentencing Act"), Pub. L. No. 111-220 ; 124 Stat. 2372, which "reduced the statutory penalties for cocaine based offenses" to "alleviate the severe sentencing disparity between crack and powder cocaine," United States v. Peters , 843 F.3d 572, 575 (4th Cir. 2016). In 2018, Congress passed, and the President signed into law, the First Step Act of 2018 (the "First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194, which made retroactive certain provisions of the Fair Sentencing Act.
Section 404 of the First Step Act permits "[a] court that imposed a sentence for a covered offense ... [to] impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 ( Public Law 111-220 ; 124 Stat. 2372) were in effect at the time the covered offense was committed." Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018). The First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 ( Public Law 111-220 ; 124 Stat. 2372), that was committed before August 3, 2010." Id. These specified sections modified the drug amounts required to trigger mandatory minimums for crack cocaine trafficking offenses from 5 grams to 28 grams with respect to the 5-year mandatory minimum and from 50 grams to 280 grams with respect to the 10-year mandatory minimum. Fair Sentencing Act, Pub. L. No. 111-220, § 2(a), 124 Stat. 2372, 2372. The Fair Sentencing Act also eliminated the 5-year mandatory minimum for simple possession of crack. Id. at § 3, 124 Stat. 2372, 2372. See also Dorsey v. United States , 567 U.S. 260, 269, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012) (explaining sentencing discrepancies for certain drug offenses that Fair Sentencing Act sought to remedy).
Section 404 of the First Step Act does not expressly provide for a full or plenary resentencing or for a reconsideration of the original sentencing determinations.[4] The United States therefore contends that 18 U.S.C. § 3582(c)(1)(B) governs these proceedings. (Opp'n 5-11).
*687 That provision states: "[T]he court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." 18 U.S.C. § 3582(c)(1)(B). While the United States asserts that § 3582 proceedings are limited in scope and do "not authorize a de novo resentencing," (Opp'n 6), nothing in subsection 3582(c)(1)(B) prohibits the Court from considering relevant sentencing factors when examining a defendant's Guidelines range. See also United States v. Dunphy , 551 F.3d 247, 256 (4th Cir. 2009) (finding that the district court properly considered the § 3553(a) sentencing factors, which did not turn the § 3582(c) proceeding into a full sentencing hearing).
This approach mirrors the Fourth Circuit's analysis under Rule 35(b), which allows the Court to "consider other sentencing factors ... when deciding the extent of a reduction." United States v. Davis , 679 F.3d 190, 195 (4th Cir. 2012) ; see also U. S. Sentencing Comm'n, Office of Educ. & Sentencing Practice, First Step Act , https://www.ussc.gov/sites/default/files/pdf/training/newsletters/2019-special_FIRST-STEP-Act.pdf (last visited May 2, 2019) ("[T]he courts should consider the guidelines and policy statements, along with the other 3553(a) factors, during the resentencing."). Furthermore, the Fourth Circuit has recently emphasized that in analogous § 3582(c)(2) proceedings district courts must adequately consider evidence of rehabilitation and other post-conviction mitigating conduct before deciding § 3582 motions for sentence reductions. United States v. Martin , 916 F.3d 389, 398 (4th Cir. 2019) (when considering § 3582(c)(2) motions, "district court cannot ignore a host of mitigation evidence and summarily deny a motion to reduce a sentence and leave both the defendant and the appellate court in the dark as to the reasons for its decision").
In determining the propriety of a sentence modification, the Court first addresses whether a reduction comports with the requirements of the First Step Act and then "consider[s] whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." Dillon v. United States , 560 U.S. 817, 826, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010). The First Step Act makes clear that even if a defendant is eligible for a sentence reduction, the decision whether to grant a reduction remains within the district court's discretion. See Pub. L. No. 115-391, §§ 404(a)-(b), 132 Stat. 5194, 5222.
III. Analysis
A. Black's Conviction in Count Three Constitutes a Covered Offense
Black committed an offense before August 3, 2010, which involved distributing fifty grams or more of crack cocaine (Count Three). The United States does not dispute that Black's offense in Count Three constitutes a "covered offense" as defined by the First Step Act. See First Step Act, Pub. L. 115-391, § 404(a); 132 Stat. 5194, 5222. Relevant here, section 2 of the Fair Sentencing Act increased the drug quantities necessary to trigger mandatory minimum sentences under 21 U.S.C. § 841(b)(1), see Fair Sentencing Act Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372. Because Black's offense falls within section 2 of Fair Sentencing Act, the First Step Act "reduce[s] the statutory penalties for cocaine base offenses" and modifies the penalties applicable to Black. Peters , 843 F.3d at 575.
*688 B. Recalculating the Guidelines Range After Applying the First Step Act
1. Changing the Penalty for Count Three Affects Sentence Grouping
Pursuant to the First Step Act, Count Three no longer carries a ten-year mandatory minimum sentence and a maximum sentence of life in prison.[5] Rather, the First Step Act decreased the applicable penalty for Count Three to a five-year mandatory minimum and a statutory maximum of forty years in prison. Because the statutory maximum has now decreased from life to forty years, USSG § 4B1.1(b)(B) provides the total offense level of 34 for Count Three. With a criminal history category VI, assuming Black remains a career offender, his Guidelines range for Count Three becomes 262 months to 327 months. The United States agrees with this computation for Count Three. (Opp'n 1.)
Critically, however, the presentence report grouped Black's Guidelines for Counts One, Two, and Three in accordance with the grouping rules provided in the U.S. Sentencing Guidelines Manual Chapter Three, Part D. (PSR Wkst B.) The United States did not discuss sentence grouping in its Opposition but recognized that the First Step Act changed Black's statutory penalty and Guidelines range for Count Three. (Opp'n 12.) Utilizing the applicable sentence grouping Guidelines, reducing the offense level for Count Three pursuant to the First Step Act similarly reduces Black's Guidelines range for Count Two to 262 months to 327 months.[6] USSG Sentencing Table (2004). But, due to the unique circumstances of this case, the Guidelines analysis does not end there.
2. The Career Offender Sentencing Enhancement Does Not Apply
The Court must consider another imperative issue: whether it should address the prior error in labeling Black a career offender. When the Court initially sentenced Black, the Guidelines explained that predicate offenses such as his New York robberies should be considered one offense.[7] Counsel for Black made the appropriate objection prior to sentencing, but the Court overruled it. (Sentencing Tr. 8-9.) That error effectively doubled Black's applicable Guidelines range, increasing it from 188 months to 235 months to 360 months to life. (ECF No. 158.)
*689 While recognizing the error, the United States contends that Section 3582 proceedings are limited in scope and "[t]his [C]ourt has no occasion to address the issue of whether the court erroneously categorized [Black] as a career offender in his original sentencing, and [Black] has had the opportunity on appeal and two motions under § 2255 to address that issue." (Opp'n 12-13.) Black counters this argument by noting that the First Step Act allows the Court to sentence him "as if the Fair Sentencing Act had been in place at the time of his original sentencing" and places no other limit on what the Court may consider. (Reply 5, ECF No. 159.) Black further argues that the First Step Act directs the Court to conduct a "complete review on the merits" and that doing so would allow the Court to consider its prior sentencing error by recalculating the Guidelines. (Id. 7 (quoting First Step Act, § 40; Pub. L. No. 115-391, 132 Stat. 5194, 5222).) Black adds that if he came before the Court today and the Court recognized per the Guidelines that he does not qualify as a career offender, he would face a Guidelines range of only 188 to 235 months, dramatically lower than the 360 months to life range he faced fifteen years ago (and significantly lower than the 262 months to 327 months range with the career offender enhancement). (Id. 8.)
The Court simply cannot ignore an error of this magnitude, particularly where Black objected to the career offender enhancement before sentencing and raised on appeal a related challenge to his career offender status.[8] Allowing the procedural posture of the case to overrun an individual's liberty undermines the integrity of the Court system and the value society places on judges to get things right.[9] The Court sees no reason to overlook this error and fundamental miscarriage of justice particularly where, as here, the First Step Act allows the Court to recalculate Black's Guidelines range.[10] Indeed, the First Step *690 Act affords the Court the opportunity to review the Motion on its merits and to determine the applicable Guidelines range after Congress modified the penalties for certain drug offenses.
To calculate the applicable Guidelines range, the Court must first determine the offense level and criminal history pursuant to USSG § 1B1.1(a). See United States v. Muldrow , 844 F.3d 434, 439 (4th Cir. 2016) (discussing in § 3582(c)(2) context how to calculate applicable Guidelines range). In so doing, the Court finds that this requires only a review of the information contained in the presentence report and a mechanical modification based on application of the Guidelines. Such examination does not require a de novo resentencing with Black's presence or a relitigation of whether his prior offenses qualify as career offender predicates.
To be sure, the fact that the First Step Act permits sentence modification and all parties now recognize that Black should not have been sentenced as a career offender under the settled law at the time of his sentencing makes this case distinguishable from others. Cf. Whiteside v. United States , 748 F.3d 541, 543, 551 (4th Cir. 2014), on reh'g en banc , 775 F.3d 180 (4th Cir. 2014) (addressing whether defendant may challenge career offender enhancement when subsequent case law reveals the enhancement to be inapplicable to defendant). Moreover, the Sentencing Guidelines and the First Step Act do not require the Court to continue applying an erroneous Guidelines range based on a miscalculated criminal history, particularly where Black properly objected to this sentencing enhancement before his initial sentencing.[11] Rather, the Court must carefully *691 consider the statutory changes provided in the First Step Act and the modified penalties contained therein before considering how the statute and Guidelines apply specifically to Black's case.
Because the First Step Act permits this Court to recalculate Black's applicable Guidelines range, the Court finds that Black's Guidelines range should not be based on the erroneous career offender enhancement.[12] After grouping the offenses in accordance with USSG § 3D1.4 and methodically recalculating the Guidelines range absent the career offender enhancement, the Court finds Black's total offense level is 33 and his criminal history score is IV, resulting in an applicable Guidelines range of 188 months to 235 months. USSG ch. 5, pt. A (sentencing table). The Court turns now to the extent of Black's sentence modification in light of the First Step Act.
C. Black Qualifies for a Sentence Reduction Pursuant to the First Step Act
Black requests that the Court reduce his sentence to time served based on the Guidelines range, absent the career offender enhancement, of 188 to 235 months.[13] (Mot. 1; Reply 4.) The United States agrees that the Court should reduce his sentence for Count Three but asserts that the applicable Guidelines range, with the career offender enhancement, amounts to 262 to 327 months. (Opp'n 12.) The Court finds appropriate reducing Black's sentence to 210 months for each count, to run concurrently.
In enacting the First Step Act, Congress determined that our criminal justice system disparately over sentenced drug offenders like Black. Black lawfully seeks relief based on the modified penalties for crack cocaine offenses that the First Step Act created. While the Court previously sentenced Black at the low end of his applicable Guidelines range, the presentence report erroneously calculated that range using a misapplied career offender sentence enhancement.[14]
Looking to the corrected Guidelines range of 188 months to 235 months, the Court must determine the appropriate reduction that the First Step Act affords to Black. As suggested by the United States Sentencing Commission, the Court will consider the 18 U.S.C. § 3553(a) factors and the policy statements set forth in *692 USSG § 1B1.10. Considering the factors and policy statements together with the arguments in the Motion and responses thereto, imposing a sentence of 210 months imprisonment, at the middle of the applicable Guidelines range after applying the First Step Act, adequately deters criminal conduct, reflects the seriousness of Black's offenses, promotes respect for the law, and complies with the relevant USSG provisions.
The Court also finds that reducing Black's sentence to 210 months does not threaten public safety. Black has accumulated only three infractions in his fifteen years in prison, all of which were non-violent incidents. (Reply 9.) The United States and the Bureau of Prisons recognize that he completed dozens of programs while incarcerated and acknowledge him as a good worker. (Opp'n 2.) While Black has been the subject of investigations concerning very serious behavioral allegations in prison, (Opp'n 2), those allegations do not warrant subjecting Black to a period of incarceration that Congress, through the First Step Act, has deemed excessive.[15] And to balance any such concerns, the Court denies Black's Motion to the extent that he seeks a reduced supervised-release term. In sum, after considering the various factors that the Court must assess when reaching the appropriate sentence, including any post-conviction mitigating conduct and aggravating conduct, Martin , 916 F.3d at 398, the Court finds nothing in Black's record justifies the Court precluding relief under the First Step Act.
Accordingly, the Court finds that, after grouping the closely related counts and applying the 188 months to 235 months Guidelines range, reducing Black's sentence to 210 months on each count of conviction comports with the First Step Act. The Court GRANTS the Motion in part, (ECF No. 154), and REDUCES Black's sentence on each count to 210 months, running concurrently. The Court DENIES the Motion as to Black's terms of supervised release. Black's June 6, 2005 sentencing judgment SHALL otherwise remain unchanged.
It is SO ORDERED.

The presentence report contradicts itself regarding Black's arrest dates for these robberies. Regardless, the presentence did not identify an intervening arrest for this set of offenses.

The presentence report calculated a total of eleven criminal history points for Black based on his New York robbery offenses (nine points) and two criminal possession of marijuana offenses (two points). (PSR Wkst C.) Black, therefore, does not have other predicate offenses that qualify him for career offender status. In any event, the presentence report identified only the robbery offenses as predicate crimes of violence for the career offender designation, and the Court may not substitute a previously unidentified conviction to sustain Black's career offender designation. United States v. Winbush , 922 F.3d 227 (4th Cir. 2019). Absent the career offender designation, Black would have faced a Guidelines range of 188 months to 235 months imprisonment. (See ECF No. 158.)

The presentence report described Black's objection:
The Defense Attorney, William E. Riley, IV, objects to the application of Career Offender status to the defendant. He states that the Robbery convictions used are "stale" as the occurred over 15 years ago, that one occurred when the defendant was a juvenile, and that the offenses were like offenses that occurred on consecutive days sharing the same arrest dates and one sentencing date.
PSR B-1.
Because the robberies occurred during the same period in September 1987 without an intervening arrest, they should not have counted as separate predicate crimes of violence for the career offender sentence enhancement. See USSG § 4A1.2(a)(2) (2004). However, the predicate robbery offenses qualify as violent felonies for the Armed Career Criminal Act, which increased the statutory penalty Black faced for Count Two from a maximum of ten years to a minimum of 15 years. See 18 U.S.C. § 924(e)(1) (setting forth armed career criminal penalties); United States v. Hammond , 912 F.3d 658, 665 (4th Cir. 2019) (concluding that all New York robbery statutes require the same element of violent physical force or threatened violent force, satisfying the synonymous career offender force clause). Black's status as an armed career criminal does not change the analysis here.

Section 404 provides:
SEC. 404. APPLICATION OF FAIR SENTENCING ACT.
(a) Definition Of Covered Offense.-In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220 ; 124 Stat. 2372), that was committed before August 3, 2010.
(b) Defendants Previously Sentenced.-A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220 ; 124 Stat. 2372) were in effect at the time the covered offense was committed.
(c) Limitations.-No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220 ; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.
First Step Act, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222.

The presentence report attributed 59.5 grams of cocaine base to Black for Count Three. The Fair Sentencing Act modified the drug quantities necessary to trigger the mandatory ten-year minimum sentence from 50 grams to 280 grams. Pub. L. No. 111-220, § 2(a)(2), 124 Stat. 2372, 2372.

The penalty for Count One remains capped by the 240-month statutory maximum. (PSR Wkst D.)

United States Sentencing Guidelines § 4A1.2(a)(2) provided "[p]rior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A 1.1 (a), (b), and (c)." USSG § 4A1.2(a)(2) (2004). The Commentary to that section explained,
Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.
USSG § 4A1.2 app. n.3 (2004). See also United States v. Huggins , 191 F.3d 532, 539 (4th Cir. 1999) (explaining when related predicate offenses count as separate offenses for career offender enhancement after intervening arrest). The PSR itself mentioned that the robbery offenses "had the same arrest and conviction dates." (PSR Wkst C.)

Determining the Guidelines range after analyzing the grouping rules, modified drug weights, offense levels, and Black's criminal history generates no easy task. As other courts have observed, some "sentencing adventures [are] more complicated than reconstructing the Staff of Ra in the Map Room to locate the Well of the Souls." United States v. Perez-Silvan , 861 F.3d 935, 944 (9th Cir. 2017) (citing Almanza-Arenas v. Lynch , 815 F.3d 469, 482-83 (9th Cir. 2016) (en banc) (Owens, J., concurring); Raiders of the Lost Ark (Paramount Pictures 1981).)

As a fellow jurist observed, judges are not infallible:
But, whenever judges learn of significant mistakes that affect the outcome of a case, there is value to correcting them transparently. Correcting errors is not only required to do justice, but reemphasizes a sad but important truth-that although almost all judges try very hard to do their best, we sometimes fall short. More frequent admissions of human fallibility will increase the public appreciation of the role of the courts and their capacity for human error.
Hon. Andrew D. Hurwitz, When Judges Err: Is Confession Good for the Soul? , 56 Ariz. L. Rev. 343, 351 (2014).

While the United States disputes the Court's ability to correct this error in a First Step Act proceeding, the United States does not identify what relief or procedural vehicle Black could utilize to remedy his erroneous career offender status. (See ECF No. 143 at 6 n.3 (United States recognizing that Black should not have been sentenced as a career offender in 2005).) To that end, the Court cannot discern how Black could raise a successful ineffective assistance of counsel claim in a § 2255 motion, as Counsel for Black effectively objected to Black's career offender status prior to sentencing. Cf. United States v. Carthorne , 726 F.3d 503. 509 (4th Cir. 2013) ("when a defendant has not objected to that [career offender] classification before the district court, we review such a question for plain error") (emphasis added). In this case, the Court and Probation erred.
Also, apart from the applicable First Step Act, there has been no change in the law to afford Black relief through other postconviction proceedings. See , e.g. , United States v. Wheeler , 886 F.3d 415, 429 (4th Cir. 2018), cert. denied , --- U.S. ----, 139 S. Ct. 1318, 203 L.Ed.2d 600 (2019) (analyzing savings clause to determine when court may address § 2241 petition on the merits); see also United States v. Whiting , No. 5:12-CR-00002, 2017 WL 605322, at *1 (W.D. Va. Feb. 14, 2017) (questioning what procedural vehicle may be used when parties agree defendant erroneously sentenced as a career offender). At the time of Black's sentencing, the Guidelines did not support the career offender enhancement attributed to him, thus no substantive law changed to trigger Black's ability to seek postconviction relief. Reviewing the Motion on the merits, as the First Step Act allows, provides the Court the opportunity to calculate the appropriate Guidelines range for Black in this unusual case.

To the extent that the First Step Act does not make clear how Courts are to proceed when confronted with such errors, the Court notes that the rule of lenity generally applies to ambiguous statutes. United States v. Shabani , 513 U.S. 10, 17, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994). This traditional tool of statutory construction holds that "where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant." Adamo Wrecking Co. v. United States , 434 U.S. 275, 284-285, 98 S.Ct. 566, 54 L.Ed.2d 538 (1978) (quoting United States v. Bass , 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) ); see generally Antonin Scalia & Bryan Garner , Reading the Law , 296-99 (2012). As a principle of statutory construction, the rule of lenity "applies not only to interpretations of the substantive ambit of criminal [prosecutions], but also to the penalties they impose." Bifulco v. United States , 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). "This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." Ladner v. United States , 358 U.S. 169, 178, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958). Lenity is especially compelling here given that Black does not qualify as a career offender. "[W]here text, structure, and history fail to establish that the Government's position is unambiguously correct-we apply the rule of lenity and resolve the ambiguity in [the defendant's] favor." United States v. Granderson , 511 U.S. 39, 54, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994).

This case presents unique circumstances, so the Court does not conclude that a defendant may challenge every aspect of sentencing through the First Step Act. But the Act leaves much to the Court's discretion. First Step Act, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222. The parties, Probation, and the Court all recognize the original cardinal error in sentencing Black as a career offender. The Court opts to correct this error when recalculating the Guidelines after applying the First Step Act in this limited circumstance and based on the unusual factual record before it.

The Court has been advised that Black's projected release date is May 10, 2030. (Mot. 1 n.1.)

The table below summarizes the differences in the Sentencing Guidelines after the First Step Act:
Original Judgment Fair Sentencing Act/First Step Act (absent misapplied Career Offender Guideline) Total Offense Level: 37 33 Criminal History Category VI IV Guideline Range 360 months to life 188 months to 235 months Sentence Imposed 360 months 210 months

To the extent Black requires any treatment for the allegations contained in his prison records, the Court urges the Bureau of Prisons to provide Black with such assistance. The Court, however, does not base its sentencing decision on treatment options available to Black. Tapia v. United States , 564 U.S. 319, 321, 334, 131 S.Ct. 2382, 180 L.Ed.2d 357 (2011) (holding that Sentencing Reform Act precludes federal courts from imposing or lengthening a prison term to promote a criminal defendant's rehabilitation). The Court further urges the Bureau of Prisons to correct any files mislabeling Black as a career offender.