**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-6381

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DANIEL W. WIRSING, a/k/a Big Dog, a/k/a Ace,

Defendant - Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg.  John Preston Bailey, District Judge.  (3:07-cr-00049-JPB-RWT-1)

Argued:  October 31, 2019                    Decided:  November 20, 2019
                          Amended:  November 21, 2019

Before WYNN, QUATTLEBAUM, and RUSHING, Circuit Judges.

Reversed and remanded by published opinion. Judge Wynn wrote the opinion, in which Judge Quattlebaum and Judge Rushing joined.

**ARGUED:**  Jenny R. Thoma, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Wheeling, West Virginia, for Appellant.  Daniel Kane, United States Department of Justice, Washington, D.C., for Appellee.  **ON BRIEF:**  Nicholas J. Compton, Assistant Federal Public Defender, Kristen M. Leddy, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Martinsburg, West Virginia, for Appellant. William J. Powell, United States Attorney, Jeffrey A. Finucane, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Martinsburg, West Virginia, for Appellee.

WYNN, Circuit Judge:

Defendant Daniel Wirsing appeals from the district court's denial of his Motion for a Reduced Sentence under the First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222.

The First Step Act provides that a sentencing court "may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." *Id.* § 404(b), 132 Stat. at 5222 (citation omitted). A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id.* § 404(a), 132 Stat. at 5222 (citation omitted).

Though the Government and Defendant agree that Defendant is entitled to relief under the First Step Act, the district court found that Defendant was not entitled to relief because Defendant was not sentenced for a "covered offense." *Id.*; *see United States v. Wirsing*, No. 3:07-cr-00049-JPB-RWT-1 (N.D.W. Va. Mar. 13, 2019). We disagree with the district court and therefore reverse and remand this matter for consideration of a sentence reduction under the First Step Act.

I.

A.

Behind the passage of the First Step Act lies an extensive history of congressional revisions to the penalties for drug-related crimes. The First Step Act is a remedial statute intended to correct earlier statutes' significant disparities in the treatment of cocaine base (also known as crack cocaine) as compared to powder cocaine.

2

In 1970, Congress enacted the Comprehensive Drug Abuse Prevention and Control Act, which separated drugs into five "schedules" according to their potential for abuse. Pub. L. No. 91-513, § 202(a)-(b), 84 Stat. 1236, 1247-48 (1970). The statute assigned penalties in accordance with a drug's schedule and whether it was a narcotic, without considering quantity (with one minor exception related to distribution of "a small amount of marihuana for no remuneration"). *Id.* § 401(b)(4), 84 Stat. at 1262; *see id.* § 401(b), 84 Stat. at 1261-62 (codified at 21 U.S.C. § 841). That changed in 1984, when Congress introduced quantities to the statute. Controlled Substances Penalties Amendments Act of 1984, Pub. L. No. 98-473, § 502, 98 Stat. 1837, 2068-69 (codified at 21 U.S.C. § 841(b)). The 1984 act constituted an attempt to "eliminat[e] sentencing dispar[i]ties caused by classifying drugs as narcotic and nonnarcotic," instead tying penalties to drug weight. *Chapman v. United States*, 500 U.S. 453, 461 (1991).

The disparity between crack and powder cocaine originated in a statute enacted two years later: the Anti-Drug Abuse Act of 1986. *Kimbrough v. United States*, 552 U.S. 85, 95 (2007) (citing Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207). The Anti-Drug Abuse Act introduced mandatory minimums for offenses involving specified weights of particular drugs. Anti-Drug Abuse Act § 1002, 100 Stat. at 3207-2 to -4 (codified at 21 U.S.C. § 841(b)(1)). For example, a defendant convicted of an offense involving "5 kilograms or more of a mixture or substance containing a detectable amount of . . . cocaine" or "50 grams or more of a mixture or substance . . . which contains cocaine base" was subject to a ten-year mandatory minimum sentence. *Id.* § 1002, 100 Stat. at 3207-2. Similarly, the statute mandated a five-year minimum sentence where the

3

conviction related to 500 grams or more of powder cocaine or 5 grams or more of cocaine base. *Id.* § 1002, 100 Stat. at 3207-3. Thus, the 1986 statute provided that "a drug trafficker dealing in crack cocaine [was] subject to the same sentence as one dealing in 100 times more powder cocaine." *Kimbrough*, 552 U.S. at 91. The Sentencing Guidelines then incorporated this ratio "for the full range of possible drug quantities." *Id.* at 97 (citation omitted); *see Dorsey v. United States*, 567 U.S. 260, 267-68 (2012).

The 100-to-1 ratio came under heavy criticism. *See Dorsey*, 567 U.S. at 268; *Kimbrough*, 552 U.S. at 97-100. For example, between 1995 and 2007, the United States Sentencing Commission issued four reports to Congress advising that "the ratio was too high and unjustified." *Dorsey*, 567 U.S. at 268. First, "research showed the relative harm between crack and powder cocaine [was] less severe than 100 to 1." *Id.* In fact, "[t]he active ingredient in powder and crack cocaine is the same"; the difference is in how the drugs are ingested, with crack "produc[ing] a shorter, more intense high." *Kimbrough*, 552 U.S. at 94. Second, "the public had come to understand sentences embodying the 100-to-1 ratio as reflecting unjustified race-based differences." *Dorsey*, 567 U.S. at 268; *see* Gov't Br. at 12 (noting that this "sentencing scheme . . . had [a] racially disparate impact"); *see also Kimbrough*, 552 U.S. at 98 (citing the Sentencing Commission's 2002 finding that "[a]pproximately 85 percent of defendants convicted of crack offenses in federal court are black"); Barack Obama, *The President's Role in Advancing Criminal Justice Reform*, 130 Harv. L. Rev. 811, 827 (2017) (noting that the disparity "resulted in excessive and unwarranted punishments that fell disproportionately on defendants of color"); Sonja B. Starr & M. Marit Rehavi, *Mandatory Sentencing and Racial Disparity: Assessing the Role*

4

*of Prosecutors and the Effects of* Booker, 123 Yale L.J. 2, 36-37 (2013) (referring to "the sentencing framework's notoriously harsh treatment of crack cocaine cases," which "disproportionately involv[ed] black defendants"). Additionally, the 100-to-1 disparity "mean[t] that a major supplier of powder cocaine [could] receive a shorter sentence than a low-level dealer who b[ought] powder from the supplier but then convert[ed] it to crack." *Kimbrough*, 552 U.S. at 95; *see also id.* at 98.

The Supreme Court mitigated the harshest effects of this sentencing regime in its *Booker* and *Kimbrough* decisions. In *United States v. Booker*, the Supreme Court held that the Guidelines were "effectively advisory"; that is, a sentencing court was required "to consider Guidelines ranges," but it could "tailor the sentence in light of other statutory concerns as well." 543 U.S. 220, 245 (2005). Then, in *Kimbrough v. United States*, the Court held that a sentencing judge could find "that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing. In making that determination, the judge may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses." 552 U.S. at 91 (citation omitted) (quoting 18 U.S.C. § 3553(a)). After *Booker* and *Kimbrough*, some district courts opted "to vary from the crack cocaine Guidelines based on policy disagreement with them." *Spears v. United States*, 555 U.S. 261, 264 (2009) (per curiam) (emphasis omitted) (affirming district courts' authority to vary from the Guidelines in this way). But not all district courts did so, and all courts remained bound by the disparate mandatory minimums imposed by the statute.

B.

Congress addressed the 100-to-1 sentencing inequity with the August 3, 2010 enactment of the Fair Sentencing Act. Pub. L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act described itself as intended "[t]o restore fairness to Federal cocaine sentencing." *Id.*, 124 Stat. at 2372. In a section labeled "Cocaine Sentencing Disparity Reduction," the Fair Sentencing Act increased the quantities applicable to cocaine base to 280 grams for the ten-year mandatory minimum and to 28 grams for the five-year mandatory minimum. *Id.* § 2, 124 Stat. at 2372 (codified at 21 U.S.C. § 841(b)(1)). "The effect of the changes [in Section 2 of the Fair Sentencing Act] was to reduce the sentencing disparity between crack cocaine offenses and powder cocaine offenses by lowering the crack-to-powder ratio from 100–to–1 to 18–to–1." *United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013). Additionally, the Fair Sentencing Act eliminated the mandatory minimum sentence for "simple possession" of cocaine base. Fair Sentencing Act § 3, 124 Stat. at 2372 (codified at 21 U.S.C. § 844(a)).

The Supreme Court later held that the new penalty provisions applied to all crack cocaine offenders sentenced on or after August 3, 2010, even if they committed their offense before that date. *Dorsey*, 567 U.S. at 264. Those sentenced prior to the Fair Sentencing Act's enactment, however, could not benefit from the reduction in sentencing disparities unless they could successfully bring a motion under the narrow exception provided by 18 U.S.C. § 3582(c)(2). *See Black*, 737 F.3d at 282, 286-87.

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently

6

been lowered by the Sentencing Commission . . . , the court may reduce the term of imprisonment," subject to some restrictions listed in the statute. *Id.* § 3582(c)(2).

After Congress enacted the Fair Sentencing Act, the Sentencing Commission promulgated amendments to "lower[] the base offense levels assigned to different amounts of cocaine base," including Amendments 750 and 782. *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016) (citing U.S. Sentencing Guidelines Manual app. C, amend. 750 (U.S. Sentencing Comm'n 2011); *id.* app. C supp., amend. 782 (U.S. Sentencing Comm'n 2014)). The Commission provided that these Guidelines amendments applied retroactively. U.S. Sentencing Guidelines Manual § 1B1.10(d) (U.S. Sentencing Comm'n 2018); *see Peters*, 843 F.3d at 575. Thus, some defendants sentenced before August 3, 2010 could seek relief, not directly under the Fair Sentencing Act, but indirectly by means of a § 3582(c)(2) motion related to one of the retroactive Guidelines amendments. *See Peters*, 843 F.3d at 574-75. However, a reduction under § 3582(c)(2) was not authorized if the Guidelines amendment "d[id] not have the effect of lowering the defendant's applicable guideline range." U.S. Sentencing Guidelines Manual § 1B1.10(a)(2)(B); *see id.* § 1B1.10 cmt. n.1(A) (defining "applicable guideline range"); *see also United States v. Muldrow*, 844 F.3d 434, 438 (4th Cir. 2016) (citing *Dillon v. United States*, 560 U.S. 817, 826-27 (2010)); *Peters*, 843 F.3d at 574. Thus, those defendants who were sentenced before August 3, 2010 and whose applicable Guideline range was not lowered by one of the Guidelines amendments continued to have no way to access the benefits of the Fair Sentencing Act.

7

In some cases, these excluded individuals were defendants who almost certainly would not have faced a different sentence if they had been charged, convicted, and sentenced after the Fair Sentencing Act. *E.g.*, *Peters*, 843 F.3d at 577, 581 (affirming the district court's denial of the defendant's § 3582(c)(2) motion based on Amendment 782 because the amendment did not impact his Guidelines range, given the massive quantities of cocaine base involved). Others, however, were automatically excluded through the technical application of the career-offender provision—those whose sentences were driven not by the quantity of drugs involved but rather by their status as a career offender. *E.g.*, *United States v. Dean*, 699 F. App'x 173, 173 (4th Cir. 2017) (per curiam) ("[The defendant] is not entitled to relief because he was sentenced as a career offender, and the career offender Guideline was not impacted by Amendment 782.").

Against this background, Congress enacted the First Step Act in December 2018. The First Step Act filled some gaps left by the Fair Sentencing Act. For example, before the First Step Act, the defendant in *Dean* could not access the benefits of the Fair Sentencing Act: he was sentenced in June 2010, shortly before the Fair Sentencing Act's enactment, and he was ineligible for relief under Amendment 782. *See id.*; *United States v. Dean*, No. 4:09-cr-00854-RBH-4, Dkt. 275 (D.S.C. June 2, 2010). That changed with the First Step Act. Earlier this year, the *Dean* district court exercised its discretion to grant the defendant's First Step Act motion and to resentence him to time served. *See Dean*, No. 4:09-cr-00854-RBH-4, Dkt. 634 (D.S.C. May 2, 2019) (text order).

C.

The First Step Act provides that a sentencing court "may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222 (citation omitted). A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id.* § 404(a), 132 Stat. at 5222 (citation omitted). Among other limitations, Congress left the decision as to whether to grant a sentence reduction to the district court's discretion. *Id.* § 404(c), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

On its face, the First Step Act allows the retroactive application of the modifications to penalties that Congress enacted in the Fair Sentencing Act. *Id.* § 404(a), 132 Stat. at 5222; *see also* S. Comm. on the Judiciary, 115th Cong., The First Step Act of 2018 (S.3649) – as introduced 2 (2018) (describing a bill with the same text as the version of Section 404 that was ultimately enacted as "allow[ing] prisoners sentenced before the Fair Sentencing Act of 2010 reduced the 100-to-1 disparity in sentencing between crack and powder cocaine to petition the court for an individualized review of their case" and as "bring[ing] sentences imposed prior to 2010 in line with sentences imposed after the Fair Sentencing Act was passed" (emphasis omitted)); 164 Cong. Rec. S7020-02, S7021 (daily ed. Nov. 15, 2018) (statement of Sen. Durbin) (describing the same bill as an opportunity "to give a chance to thousands of people who are still serving sentences for nonviolent offenses

9

involving crack cocaine under the old 100-to-1 rul[e] to petition individually" for a sentencing reduction). This appeal presents the question of which defendants may seek such retroactive relief.

II.

In May 2007, Defendant was named in thirteen counts of a fifteen-count, multi-defendant indictment. The charges against him included a conspiracy related to cocaine base (Count 1); distribution of various quantities of cocaine base, the greatest of which was 1.15 grams, in March 2006 and February 2007 (Counts 2-8 and 13); possession with intent to distribute marijuana (Counts 9 and 15); felon in possession of a firearm (Count 10); and possession with intent to distribute "approximately 16.0 grams" of cocaine base (Count 14). J.A. 22. Defendant pleaded guilty to Counts 10 and 14 and the court dismissed the remaining counts against him on the Government's motion. The district court sentenced Defendant in January 2008 under the 2007 Guidelines Manual.

As specified in the indictment, Count 14 alleged a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Defendant agreed to plead guilty to those provisions in his plea agreement. In his plea colloquy, Defendant pleaded guilty to "possession with intent to distribute 16 grams of cocaine base." Change of Plea Transcript, Dist. Ct. Dkt. 185, at 23.

At the time of Defendant's indictment, plea, and sentencing, 21 U.S.C. § 841(b)(1) mandated a sentence of ten years to life for possession with intent to distribute 50 grams or more "of a mixture or substance" containing cocaine base, § 841(b)(1)(A)(iii); five to forty years for 5 grams or more, § 841(b)(1)(B)(iii); and a maximum of twenty years

10

otherwise, § 841(b)(1)(C). Thus, Defendant was subject to a statutory sentencing range of five to forty years for Count 14.

In the plea agreement, the parties "stipulate[d] and agree[d] that the total drug relevant conduct of the defendant with regard to the Indictment is [one gun] . . . and 60.135 grams of cocaine base." Plea Agreement, Dist. Ct. Dkt. 114 ¶ 11. Although the district court did not mention drug quantity at sentencing, the court implicitly adopted the stipulated quantity for purposes of sentencing by accepting the calculations in the presentence investigation report, which were based on the 60.135-gram quantity. That quantity yielded a base offense level of 30. U.S. Sentencing Guidelines Manual § 2D1.1(c)(5) (U.S. Sentencing Comm'n 2007). After a two-level increase for possession of a firearm, Defendant's adjusted offense level was 32. *Id.* § 2D1.1(b)(1). However, because he was a career offender and his statute of conviction provided a maximum sentence of forty years, his offense level was increased to 34 and his criminal history category was automatically set at VI. *Id.* § 4B1.1(b). After a reduction for acceptance of responsibility under § 3E1.1, his total offense level was 31. His Guidelines range on Count 14 was therefore 188 to 235 months. *Id.* § 5 pt. A. The district court sentenced him to 188 months, plus a 120-month concurrent sentence for the felon-in-possession charge (Count 10).

In February 2019, Defendant moved for a reduced sentence pursuant to the First Step Act. Because Defendant had been sentenced before August 3, 2010 in accordance with the career-offender provision, he was among those inmates who were previously unable to seek relief under the Fair Sentencing Act and the related Guidelines amendments.

Defendant reasoned that his sentence could be reduced if the court opted to "impose a reduced sentence as if" Section 2 of the Fair Sentencing Act had been in effect when he committed the offense charged in Count 14. First Step Act, § 404(b), 132 Stat. at 5222. Under 21 U.S.C. § 841 as amended by the Fair Sentencing Act, the indictment's charge of approximately 16 grams of cocaine base for Count 14 would fall under § 841(b)(1)(C) rather than § 841(b)(1)(B)(iii), since after the Fair Sentencing Act, § 841(b)(1)(B)(iii) only applies where a violation involves "28 grams or more" of cocaine base. Under § 841(b)(1)(C), Defendant's conviction would not be subject to a mandatory minimum sentence and would expose him to a maximum sentence of twenty years. With a statutory maximum sentence of twenty years—as opposed to forty years under the statute in effect in 2007 and 2008—Defendant's offense level as a career offender would be 32 rather than 34. U.S. Sentencing Guidelines Manual § 4B1.1(b). With the same reduction for acceptance of responsibility that he received in 2008, Defendant's total offense level would drop to 29. His Guidelines range would be 151 to 188 months.[1] According to Defendant, if the district court granted his motion and sentenced him at the bottom of the revised Guidelines range—as it did at his initial sentencing—he would be eligible for immediate release. The Government agreed that Defendant was eligible for relief under the First Step Act and did not disagree that a sentence at the low end of the Guidelines range, resulting in immediate release, would be appropriate.

---

[1] Defendant does not contest that his relief, if any, will be in the form of a limited sentence modification rather than a plenary resentencing.

12

Despite this consensus between the parties, the district court found Defendant ineligible for relief under the First Step Act. The court reached that conclusion by first finding that 18 U.S.C. § 3582(c)(2) provided the proper vehicle for a First Step Act motion and then finding that the quantity of cocaine base used for sentencing purposes—60.135 grams—would not result in a reduced Guidelines range, rendering Defendant ineligible. The district court did not quote or analyze the text of the First Step Act or cite any cases that had addressed First Step Act motions. The court also did not reach the question of whether, in its discretion, it would grant relief to Defendant if he was eligible. This appeal followed.

In its briefing before this Court, the Government flipped positions, agreeing with the district court on different grounds. *See* Gov't Br. at 5; *id.* at 8 n.1 (citing 18 U.S.C. § 3582(c)(1)(B) instead of § 3582(c)(2)). Specifically, the Government argued that the First Step Act conditions eligibility on whether a defendant's relevant offense conduct, here stipulated to be 60.135 grams of cocaine base, leads to a different statutory sentencing range than that applicable at his original sentencing. *Id.* at 5, 7. Defendant responded that the First Step Act allows him to seek sentencing relief because he "was convicted of violating" 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii), and the "statutory penalties" for those statutes "were modified by section 2" of the Fair Sentencing Act. Reply Br. at 4.

Later, the Government filed a motion to confess error and remand for sentencing reconsideration, arguing that while offense conduct governs eligibility, "only the cocaine base attributable to" Count 14—which the Government states is 16 grams—"can be used to determine if the statutory mandatory minimum quantity of cocaine base had been met."

13

Gov't Motion at 2. Thus, the Government once again agrees that Defendant is eligible for relief under the First Step Act, though under a different theory than that of Defendant.

We denied the Government's motion and held oral argument. We now consider the district court's reliance on 18 U.S.C. § 3582(c)(2) and the disagreement between the parties as to the First Step Act eligibility determination. These are issues of first impression in this Circuit that have not been squarely addressed by any appellate court. We review such "pure question[s] of statutory interpretation" de novo. *United States v. Segers*, 271 F.3d 181, 183 (4th Cir. 2001); *see also United States v. Allen*, 716 F.3d 98, 106 (4th Cir. 2013). We hold that (1) the district court erred in analyzing Defendant's motion under 18 U.S.C. § 3582(c)(2) and should have instead used 18 U.S.C. § 3582(c)(1)(B) and (2) Defendant's statute-of-conviction theory of eligibility is correct.[2] Our position accords with that of the majority of appellate courts that have considered these questions implicitly or without

---

[2] We note that while our opinion addresses the question of eligibility under the First Step Act and the source of a court's authority to act on a First Step Act motion, our Court has today also issued an opinion reviewing the impact of the First Step Act on sentences arising from the revocation of supervised release. *See United States v. Venable*, No. 19-6280 (4th Cir. Nov. 20, 2019).

deciding them.[3] It is also in line with the consensus view among district courts.[4]

## III.

The parties concur that the district court erred by relying on 18 U.S.C. § 3582(c)(2) (and that statute's reference to a defendant's Guidelines sentencing range), though the Government stated at oral argument that the First Step Act is nevertheless analogous to §

---

[3] *E.g.*, *United States v. Duggan*, 771 F. App'x 261, 261 (4th Cir. 2019) (per curiam) (holding that the Court did not have jurisdiction under the First Step Act because the defendant's statute of conviction, 21 U.S.C. § 841(b)(1)(C), was not modified by the Fair Sentencing Act, and citing 18 U.S.C. § 3582(c)(1)(B)); *see United States v. Martinez*, 777 F. App'x 946, 947 (10th Cir. 2019) (same); *see also United States v. Carter*, No. 19-10918, 2019 WL 5295132, at *3-4 (11th Cir. Oct. 18, 2019) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(B) and implicitly adopting the statute-of-conviction interpretation); *United States v. Jelks*, No. 19-10830, 2019 WL 4466870, at *1-2 (11th Cir. Sept. 18, 2019) (relying on the statute-of-conviction understanding of eligibility); *United States v. Jones*, No. 19-5433, 2019 WL 5436199, at *2 (6th Cir. Sept. 12, 2019) (using the statute of conviction to analyze eligibility but also using offense conduct in the alternative); *United States v. Hegwood*, 934 F.3d 414, 417 (5th Cir.) (assuming without deciding that the statute-of-conviction view is correct), *cert. denied*, No. 19-5743, 2019 WL 4923453 (U.S. Oct. 7, 2019); *United States v. Jones*, 767 F. App'x 475, 476 (4th Cir. 2019) (per curiam) (affirming denial of § 3582(c)(2) motion but noting that the defendant could still move for relief in the sentencing court under the First Step Act). *But see United States v. Means*, No. 19-10333, 2019 WL 4302941, at *2 (11th Cir. Sept. 11, 2019) (per curiam) (relying on § 3582(c)(2) and the relevant-conduct interpretation of eligibility to review a First Step Act motion). Moreover, this Court adopted Defendant's approach in the face of similar arguments by the Government after passage of the Fair Sentencing Act. *E.g.*, *United States v. Mubdi*, 539 F. App'x 75, 76-77 (4th Cir. 2013) (per curiam) (vacating a sentence where judicial factfinding had increased the mandatory minimum sentence).

[4] *See United States v. Hill*, No. 4:10-CR-00005-1, 2019 WL 4647259, at *1 (E.D. Tenn. Sept. 24, 2019) (noting that the "majority of [district] courts" to address eligibility have adopted the statute-of-conviction theory and collecting cases); *United States v. Shannonhouse*, No. 2:07-cr-00289-ANB-1, 2019 WL 3426328, at *3 (W.D. Pa. July 30, 2019) (noting that most district courts to consider the question have found that the court's authority to modify a sentence under the First Step Act comes from § 3582(c)(1)(B)).

3582(c)(2)—with its attendant restrictions. We hold that § 3582(c)(1)(B) is the appropriate vehicle for a First Step Act motion.

Under § 3582(c), "[t]he court may not modify a term of imprisonment once it has been imposed except" in narrow circumstances. Two provisions are relevant here. First, in all cases, "the court may modify an imposed term of imprisonment to the extent . . . expressly permitted by statute," § 3582(c)(1)(B); and second, "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(*o*), . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(2).

In denying Defendant's motion, the district court noted that the First Step Act "is devoid of direction as to the procedure to be followed in reviewing potential reductions." J.A. 38. The court then opted to apply § 3582(c)(2), reasoning that "[i]t seems logical . . . that in making the Fair Sentencing Act of 2010 fully retroactive, the Courts would follow the same procedure utilized in reviewing the potential reductions under the 2010 Act." *Id.* That procedure entailed using § 3582(c)(2) to analyze the applicability of "amend[ments to] the Guidelines with respect to cocaine base offenses" that had "[f]ollow[ed] the Fair Sentencing Act of 2010." *Peters*, 843 F.3d at 575.

The district court's analysis, however, failed to account for a key distinction between the Fair Sentencing Act and the First Step Act: the latter "expressly permit[s]"

16

modification of "an imposed term of imprisonment." 18 U.S.C. § 3582(c)(1)(B). Section 2 of the Fair Sentencing Act only modified quantities; it did not say anything about sentencings. Fair Sentencing Act § 2, 124 Stat. at 2372. Therefore, retroactive modifications under the Fair Sentencing Act could only be achieved by reference to reductions in the sentencing range made "by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). By contrast, the very purpose of the First Step Act is to make the Fair Sentencing Act retroactive. Congress has explicitly authorized courts to "impose . . . reduced sentence[s]." First Step Act § 404(b), 132 Stat. at 5222. The First Step Act thus fits under the narrow exception to finality provided by § 3582(c)(1)(B) because it "*expressly* permits the court to" modify a term of imprisonment. *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (emphasis in original) (citations omitted).

In pre-First Step Act cases, courts found § 3582(c)(1)(B) to encompass only a few statutes. *E.g.*, *United States v. Bailey*, 777 F.3d 904, 906 (7th Cir. 2015) (interpreting "expressly permitted by statute" in § 3582(c)(1)(B) as "disallowing sentence modifications unless resentencing has been ordered after a successful direct appeal under 18 U.S.C. § 3742(f), (g), or a collateral attack under 28 U.S.C. § 2255" and rejecting the defendant's contention that § 3582(c)(1)(B) could be used for a sentence reduction under the Fair Sentencing Act); *United States v. Penson*, 526 F.3d 331, 335 (6th Cir. 2008) (labeling 28 U.S.C. §§ 2106 and 2255 as "the two statutes permitting . . . modification" under § 3582(c)(1)(B)); *see also United States v. Daily*, 703 F.3d 451, 454 (8th Cir. 2013) (citing 28 U.S.C. § 2255); *United States v. Garcia-Quintanilla*, 574 F.3d 295, 303 (5th Cir. 2009) (citing 28 U.S.C. § 2106 and "those statutes governing resentencing after post-conviction

17

relief," and holding that unlike those statutes, 8 U.S.C. § 1253(a) "does not expressly permit a district court to modify the term of a previously-imposed sentence" but rather merely "addresses the *suspension* of a sentence" (emphasis added)); *United States v. Goines*, 357 F.3d 469, 476 (4th Cir. 2004) (citing 28 U.S.C. § 2255); *United States v. Triestman*, 178 F.3d 624, 628-30 (2d Cir. 1999) (citing 28 U.S.C. § 2241).

Like those statutes, the First Step Act provides explicit permission for a court to modify a sentence. Section 3742(g) mandates that "[a] district court to which a case is remanded . . . shall resentence a defendant." 18 U.S.C. § 3742(g); *see also* 28 U.S.C. § 2106 (authorizing appellate courts to "affirm, modify, vacate, set aside or reverse" sentences and remand for resentencing). Section 2255 provides that under certain circumstances, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). It is true that §§ 3742(g) and 2255(b) use mandatory language, while the First Step Act is permissive. *See* First Step Act § 404(b), 132 Stat. at 5222 ("A court that imposed a sentence for a covered offense *may* . . . impose a reduced sentence . . . ." (emphasis added)). However, such phrasing does not undermine the applicability of § 3582(c)(1)(B), which itself uses permissive language. *See* 18 U.S.C. § 3582(c)(1)(B) (noting that "the court *may* modify" a sentence (emphasis added)).

Section 3582(c)(2) was the appropriate vehicle for defendants seeking relief under the Guidelines amendments related to the Fair Sentencing Act. *See Peters*, 843 F.3d at 575. However, the distinct language of the First Step Act compels the interpretation that motions for relief under that statute are appropriately brought under § 3582(c)(1)(B). And there is

18

no reason to suppose that motions brought pursuant to § 3582(c)(1)(B) are subject to the restrictions particular to § 3582(c)(2), which are grounded in the text of the latter statute. *See Dillon*, 560 U.S. at 824-27, 831; *Peters*, 843 F.3d at 574, 577-80. Rather, in determining eligibility under § 3582(c)(1)(B), courts must look to the applicable statute to determine "the extent" to which modification is "expressly permitted by [that] statute." § 3582(c)(1)(B).

IV.

The other question before us is how eligibility is determined under the First Step Act. The statute only authorizes a court "that imposed a sentence for a covered offense" to reduce a defendant's sentence. First Step Act § 404(b), 132 Stat. at 5222. Accordingly, eligibility turns on the proper interpretation of a "covered offense."

A "covered offense" is defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id.* § 404(a), 132 Stat. at 5222 (citation omitted). In Defendant's view, the phrase "the statutory penalties for which" refers to "a Federal criminal statute." *See* Reply Br. at 4. The result of that interpretation would be that any inmate serving a sentence for pre-August 3, 2010 violations of 21 U.S.C. § 841(b)(1)(A)(iii) or (B)(iii)—both of which were modified by Section 2 of the Fair Sentencing Act, *see* Fair Sentencing Act § 2(a), 124 Stat. at 2372—is serving "a sentence for a covered offense" and may seek a sentence reduction under the First Step Act. First Step Act § 404(b), 132 Stat. at 5222. We agree that this is the correct interpretation of the statute.

On appeal, the Government has requested that we adopt a different approach. The Government's alternative reading of the statute rests on two assumptions: first, that "the statutory penalties for which" refers to "a violation"; and second, that "a violation" is determined by reference to the offense conduct attributable to the count at issue, rather than by reference to the conviction. The Government must establish the first point in order to reach the second. Because we disagree with the Government at the first stage of the analysis, we need not examine the second.

The most natural reading of the First Step Act's definition of "covered offense" is that "the statutory penalties for which were modified by [certain sections of the Fair Sentencing Act]" refers to "a Federal criminal statute" rather than "a *violation* of a Federal criminal statute." *Id.* § 404(a), 132 Stat. at 5222 (emphasis added). A general rule of statutory interpretation is that modifiers attach to the closest noun; courts should not interpret statutes in such a way as to "divorce a noun from the modifier next to it without some extraordinary reason." *Lopez v. Gonzales*, 549 U.S. 47, 56 (2006); *see also Lockhart v. United States*, 136 S. Ct. 958, 962-63 (2016). Because "Federal criminal statute" appears closer to "statutory penalties for which" than does "violation," it is more natural to attach "penalties" to "statute" than to "violation."

"Of course, as with any canon of statutory interpretation, the rule of the last antecedent is not an absolute and can assuredly be overcome by other indicia of meaning." *Lockhart*, 136 S. Ct. at 963 (citations and internal quotation marks omitted). But that is not the case here. The only possible "indicia" of an alternative meaning is the repetition of "statute" and "statutory," which at first blush appears unnecessary. Yet on closer

20

inspection, the terms are not redundant. The First Step Act specifies that it is "statutory penalties" that are at issue to avoid any ambiguity that might arise in the sentencing context between penalties specified by statute or by the Guidelines. In other words, the word "statutory" is required to clarify "penalties" regardless of whether "statutory penalties for which" modifies "Federal criminal statute" or "violation." The use of the word "statutory" is neutral between the interpretations; it is not an "indicia of meaning" that can "overcome" the more natural reading of the statute. *Id.* And it certainly does not provide an "extraordinary reason" to divorce "Federal criminal statute" from "penalties." *Lopez*, 549 U.S. at 56.

Moreover, Defendant's interpretation is supported by the statutory background in which the First Step Act was enacted and which it incorporates. Congress enacted the First Step Act at a time when some, but not all, pre-Fair Sentencing Act inmates had received relief by reference to their offense conduct through application of the post-Fair Sentencing Act Guidelines amendments. On the face of the statute, Congress's clear intent was to apply the Fair Sentencing Act to pre-Fair Sentencing Act offenders, including those who were heretofore ineligible for such relief. Congress listed specific limitations in the First Step Act, including emphasizing district courts' discretion. First Step Act § 404(c), 132 Stat. at 5222. There is no indication that Congress intended a complicated and eligibility-limiting determination at the "covered offense" stage of the analysis. *Id.* § 404(a), 132 Stat. at 5222.

Defendant's view leads to a simple interpretation of the statute: he is eligible to seek relief under the First Step Act because, "before August 3, 2010," he "committed" a "violation" of 21 U.S.C. § 841(a) and (b)(1)(B)(iii), and "the statutory penalties" for that

21

statute "were modified by" Section 2 of the Fair Sentencing Act. *Id.*; *see* Reply Br. at 4. We agree and adopt this understanding.

V.

The First Step Act provides a vehicle for defendants sentenced under a starkly disparate regime to seek relief that has already been available to later-sentenced defendants for nearly a decade. All defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in Section 404(c) of the First Step Act, are eligible to move for relief under that Act. District courts then "may," at their discretion, "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222 (citation omitted).

Because Defendant is eligible to seek relief under the First Step Act, the district court's order is reversed. We remand to the district court to consider Defendant's motion to impose a reduced sentence.

REVERSED AND REMANDED