In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2009

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GENE C. SUTTON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:07-cr-20009-JES-DGB-1 — **James E. Shadid**, *Judge.*

ARGUED MAY 26, 2020 — DECIDED JUNE 23, 2020

Before FLAUM, SCUDDER, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Over a decade ago, the district court (then Chief Judge McCuskey) sentenced Gene Sutton to his then statutory minimum 15 years' imprisonment for distributing cocaine base ("crack") and carrying a firearm during a drug-trafficking crime. In announcing the sentence, the court emphasized that it had no authority to reduce the sentence further or amend it later, except on the government's motion, and that the court's authority had been so limited since the

Sentencing Reform Act of 1984, Pub. L. 98-473, 98 Stat. 1837. "Nobody's going to change it," the court told Sutton.

But Congress did change things when it passed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Under § 404 of this new law, a defendant sentenced for a covered offense (which includes Sutton's crack cocaine charge) may move for the district court to impose a reduced sentence. Sutton submitted his motion seeking relief and the district court, now Judge Shadid, denied it. On Sutton's pro se appeal, we recruited counsel to submit supplemental briefing on the narrow question of the proper vehicle for a First Step Act motion. In other words, we asked the parties to brief how the First Step Act interacts with the Sentencing Reform Act, which, as Judge McCuskey recognized, generally prohibits a court from modifying a sentence.

We hold that the First Step Act is its own procedural vehicle. The dispute between the parties is, at this point, mostly semantic, though our conclusion does clarify that the only limits on the district court's authority under the First Step Act come from the interpretation of the First Step Act itself. With that said, this is not the case to explore fully what those limits might be. We conclude that the district court did not abuse its discretion and, therefore, affirm the judgment.

## I. Background

Sutton pleaded guilty to his two charges in 2008 and admitted that he distributed 124 grams of crack cocaine, 21 U.S.C. § 841(a)(1), (b)(1)(A), and had carried a firearm in connection with that offense, 18 U.S.C. § 924(c). Distributing more than 50 grams of crack carried a 10-year statutory minimum sentence at the time, and § 924(c) required the court to

impose a five-year sentence consecutive to that of the underlying offense, 18 U.S.C. § 924(c)(1)(A)(i), (D)(ii). The minimum total sentence for Sutton's conduct was, thus, 15 years' imprisonment.

As sentencing approached, the parties disagreed on the importance of this minimum sentence. Sutton contended that he was entitled to a three-offense-level reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. By his calculation, his Guidelines range should have been 147–168 months' imprisonment (including the 60 months for the § 924(c) charge) and so the minimum 180-month sentence was appropriate. *See* U.S.S.G. § 5G1.1(b). The government, however, argued that Sutton had lied under oath at his detention hearing. It opposed the three-level reduction and sought a further two-level enhancement for obstruction of justice. *See* U.S.S.G. § 3C1.1. This would have resulted in a sentencing range of 248–295 months. (The parties also differed on whether Sutton was responsible for 19 kilograms of powder cocaine, though it was irrelevant to the Guidelines calculation.)

The district court never resolved these disputes. Instead, the parties entered a sentencing agreement reflecting an agreed 180-month sentence. Sutton and the government would "agree to disagree," according to defense counsel, and the government likewise said it intended to "short-circuit th[e] process." In imposing the sentence reflected in the agreement, the district court similarly asserted that the agreement would "supersede the presentence report" and make all disputes "irrelevant" and "moot."

The year after entry of judgment in Sutton's case, Congress passed the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372. Section 2 of the Fair Sentencing Act raised from

50 grams to 280 grams the amount of crack cocaine necessary to trigger the 10-year minimum sentence. *See United States v. Shaw*, 957 F.3d 734, 736–37 (7th Cir. 2020) (providing tables listing changes). This could have helped Sutton, who had been convicted for distributing less than 280 grams, but the Fair Sentencing Act was not initially retroactive for defendants sentenced before its effective date, August 3, 2010. *See Dorsey v. United States*, 567 U.S. 260, 264 (2012).

Congress made the Fair Sentencing Act retroactive for someone like Sutton eight years later. Under the First Step Act,

> [a] court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed.

First Step Act, § 404(b) (citation omitted). A covered offense is defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 that was committed before August 3, 2010." *Id.* § 404(a) (citation omitted); *see Shaw*, 957 F.3d at 739 (interpreting this definition).

Sutton moved for a reduced sentence in early 2019. (The parties have consistently agreed he is eligible for relief.) He primarily argued that the agreement entitled him to his new statutory minimum—ten years—and, thus, immediate release. The government responded that Sutton had already received a sentencing benefit from the agreement as is. The district court sided with the government and declined to reduce

Sutton's sentence further. In doing so, the court characterized the government's sentencing agreement as being in exchange for Sutton's "withdrawal" of his objections to the PSR. Thus, it used probation's amended Guidelines range, which assumed Sutton had obstructed justice and was responsible for the 19 kilograms of powder cocaine. Sutton unsuccessfully sought reconsideration and submitted an untimely notice of appeal.

## II. Jurisdiction

We start with some jurisdictional housekeeping. First, Sutton's late notice of appeal does not deprive us of authority to hear this case. Federal Rule of Appellate Procedure 4(b), which governs the timing of criminal appeals, is a non-jurisdictional claim-processing rule whose enforcement the government may either waive or forfeit. *United States v. Neff*, 598 F.3d 320, 323 (7th Cir. 2010). The government has expressly waived its rights, so we consider the appeal on its merits.

Sutton was also released from prison a month before oral argument, though the parties agree that his release does not moot the appeal. Sutton is serving a five-year term of supervised release. If we were to find that the district court erred in denying a sentence reduction, it would not "automatically entitle him to less supervised release" but it would carry "great weight" in a motion to terminate supervised release under 18 U.S.C. § 3583(e)(1). *Pope v. Perdue*, 889 F.3d 410, 415 (7th Cir. 2018) (citing *United States v. Johnson*, 529 U.S. 53 (2000)). Moreover, the parties also agree the First Step Act permits the district court to reduce Sutton's term of supervised release, because § 404(b) refers to imposing a reduced *sentence* and not just a term of imprisonment. The sentence includes not only the term of imprisonment but also the term of supervised

release and any fines. *See* 18 U.S.C. §§ 3551, 3583. If we were to remand, the district court could decide whether to reduce Sutton's supervised release term and, in doing so, "factor in how much (if at all) it would have reduced [his] prison term." *United States v. Holloway*, 956 F.3d 660, 664 (2d Cir. 2020); *see also United States v. Kelley*, No. 19-30066, 2020 WL 3168518, at *3 n.5 (9th Cir. June 15, 2020) (same).

There are, thus, at least two possible remedies. Because we can order "effectual relief," even if not Sutton's early release from prison, this appeal is not moot. *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992).

### III. Procedural Vehicle

We now turn to the question on which we sought supplemental briefing: what the proper procedural vehicle is for a motion under § 404(b) of the First Step Act. The problem presented is the interaction between the First Step Act and the Sentencing Reform Act. The former permits an already sentenced defendant to request, and a district court to impose, a reduced sentence. Under the latter, though, "[t]he court may not modify a term of imprisonment once it has been imposed," with three identified exceptions. 18 U.S.C. § 3582(c).

The first exception under the Sentencing Reform Act permits a court to reduce a term of imprisonment for "extraordinary and compelling reasons" or for certain elderly prisoners. 18 U.S.C. § 3582(c)(1)(A). Originally, only the Bureau of Prisons could submit a motion under this subsection, but the First Step Act added that a defendant can now file a motion himself after exhausting administrative remedies. *See id.*; First Step Act, § 603(b)(1).

The second exception is a catch-all: "the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." 18 U.S.C. § 3582(c)(1)(B). Rule 35 is a limited remedy, available only within 14 days of sentencing for "clear error" or through the government's motion based on substantial assistance. *See* Fed. R. Crim. P. 35; *United States v. Townsend*, 762 F.3d 641, 645 (7th Cir. 2014). Beyond that rule, we have previously identified only two statutes that "expressly permit[]" modification under this exception. The first is the statute authorizing appellate review of sentences, 18 U.S.C. § 3742(f)–(g), and the second is the statute permitting collateral attack of sentences, 28 U.S.C. § 2255. *See United States v. Bailey*, 777 F.3d 904, 906 (7th Cir. 2015). Before the First Step Act, other circuits considering the question had added only 28 U.S.C. § 2106, the general statute permitting appellate review, and 28 U.S.C. § 2241, the general habeas corpus statute. *See United States v. Wirsing*, 943 F.3d 175, 184 (4th Cir. 2019) (collecting cases).

The third exception, § 3582(c)(2), allows the defendant or the Bureau of Prisons to move to reduce a sentence for "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission … if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The statute itself allows modification only of a sentence that is "based on" a sentencing range, so some sentencing agreements are excluded. *See, e.g.*, *Koons v. United States*, 138 S. Ct. 1783, 1786 (2018). It also adopts the Sentencing Commission's policy statements, which are binding, not advisory. *Dillon v. United States*, 560 U.S. 817, 819 (2010). These statements, among other

things, prohibit a sentence reduction if an amendment fails to lower the defendant's actual Guidelines range, require the court to "substitute only the amendments … leav[ing] all other guideline application decisions unaffected," and limit the court's authority to vary below the amended range. *See* U.S.S.G. § 1B1.10(a)(2)(B), (b)(1), (b)(2)(A).

Sutton's pro se motion invoked § 3582(c)(2), but everyone agrees that was the wrong vehicle. (This mistake is of no consequence, as we review pro se filings by substance, not label. *United States v. Antonelli*, 371 F.3d 360, 361 (7th Cir. 2004) (per curiam).) Even in the district court, the government noted Sutton wrongly relied on subsection (c)(2). Sutton joins that assessment on appeal, as do we. Section 3582(c)(2) applies to those whose sentencing ranges were reduced "by the Sentencing Commission." Congress, though, not the Sentencing Commission, promulgated the First Step Act and Fair Sentencing Act. *See Shaw*, 957 F.3d at 743 ("[T]he First Step Act does not include the limitations particular to § 3582(c)(2)").

The parties also agree that § 3582(c)(1)(A) does not apply, leaving only subsection (c)(1)(B) among the listed exceptions to the general prohibition on modifying sentences. The government argues that § 3582(c)(1)(B) must, therefore, provide the procedural vehicle under which § 404(b) of the First Step Act operates to permit a modification to a term of imprisonment. Sutton offers a more nuanced argument. He contends that the First Step Act is its own procedural vehicle. Though he admits that § 3582(c)(1)(B) is relevant, he objects to the label "vehicle," since the First Step Act independently authorizes a court to impose a reduced sentence.

Sutton concedes that the difference between his and the government's position is mostly semantic. Still, we agree that, to be precise, the First Step Act is its own procedural vehicle.

Section 3582(c)(1)(B) does not itself provide a basis for a defendant to move for a sentence reduction. It provides only that "the court may modify an imposed term of imprisonment to the extent otherwise permitted by statute" or Rule 35. It offers no relief and imposes no conditions, limits, or restrictions on the relief permitted by that other statute or the Rule. *See United States v. Allen*, 956 F.3d 355, 357 (6th Cir. 2020). Critically, and unlike the other two exceptions to § 3582(c), subsection (c)(1)(B) does not even refer to who can move for modification or how. All that information is contained in the other statute, here § 404(b) of the First Step Act.

Just compare those statutes that we and the other courts of appeals have previously said "expressly permit[]" modification of a term of imprisonment. 18 U.S.C. § 3582(c)(1)(B). They include appellate review statues, 18 U.S.C. § 3742; 28 U.S.C. § 2106, and collateral attack statutes, 28 U.S.C. §§ 2241, 2255. *See Bailey*, 777 F.3d at 906; *Wirsing*, 943 F.3d at 184. Section 3582(c)(1)(B) is not the "vehicle" through which a defendant seeks relief when he petitions for a writ of habeas corpus, moves to vacate his sentence, or appeals. The petition, motion, or appeal—and the statute authorizing each—is the vehicle, and each has its own procedures and limitations unique to it. So, too, with the First Step Act.

None of this is to say that § 3582(c)(1)(B) is irrelevant. The government insists if we were to treat the First Step Act as its own procedural vehicle, then that would amount to an implied repeal of § 3582(c). Implied repeals are disfavored. *E.g., Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018). The value

of § 3582(c)(1)(B), though, is precisely the fact that it allows us to avoid implied repeal. It makes explicit what would otherwise be implicit: the general prohibition against modification of a term of imprisonment gives way to specific exceptions without either repealing the other. In doing so, it does not authorize relief; it just removes a potential obstacle to relief otherwise authorized. *See Kelley*, 2020 WL 3168518, at *5 ("§ 3582(c)(1)(B) does not 'implement' the First Step Act.").[1]

Our distinction is mostly semantic, so we do not split from the Fourth Circuit. True, that court held that "§ 3582(c)(1)(B) is the appropriate vehicle for a First Step Act motion." *Wirsing*, 943 F.3d at 183. But it said that in the context of rejecting the district court's reliance on § 3582(c)(2). *Id.* at 182–83. We agree with that conclusion for the reasons stated above and in *Shaw*, 957 F.3d at 742–43. We differ not on substance, but on the use of the word "vehicle" to describe the substantive effect of § 3582(c)(1)(B). And our quibble with word choice comes only from the nuanced positions the parties present here. Given those positions, we might prefer the Second Circuit's phrasing, that § 3582(c)(1)(B) "provides the correct framework." *Holloway*, 956 F.3d at 661. It is, at most, the road on which the First Step Act vehicle travels.

Beyond semantics, there is a conceptual advantage from using the First Step Act as its own vehicle. Doing so clarifies

---

[1] Suttton goes a bit too far when he insists that § 3582(c) is *inconsistent* with the First Step Act because it authorizes modifications of more than the term of imprisonment. The First Step Act may give a district court discretion to modify an entire sentence, but the part of that discretion that includes modifying the term of imprisonment is recognized by § 3582(c). The statutes are consistent, even if § 3582(c)(1)(B) does not add anything.

that any limits on relief that the First Step Act authorizes must come from interpretation of the First Step Act itself. *See Kelley*, 2020 WL 3168518, at \*5; *cf. United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020) (reaching same result without this framing); *Allen*, 956 F.3d at 357 (same).

The government asks us to hold that the First Step Act must be read in conjunction with § 3582(c)(1)(B). We do not disagree, but all § 3582(c)(1)(B) says is that a court may modify a term of imprisonment as "expressly permitted by statute." So, to read the First Step Act in conjunction with § 3582(c)(1)(B) is just to read the First Step Act and assess what it permits.

The only consequence the government perceives from deeming § 3582(c)(1)(B) the appropriate vehicle is that a district court would then be allowed to modify a sentence only "*to the extent … expressly* permitted," § 3582(c)(1)(B) (emphasis added). In the government's view, this language demands that a court construe its discretion narrowly. Specifically, because the First Step Act authorizes a court only to impose a sentence as if the Fair Sentencing Act were in effect, the government asserts that it does not allow changes to the rest of the sentencing analysis. *See United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir.) (adopting this rule), *cert. denied,* 140 S. Ct. 285 (2019); *see also Kelley*, 2020 WL 3168518, at \*4 (same).

We express no opinion on whether the government's proposed limitations are appropriate. *See Shaw*, 957 F.3d at 742–43 (similarly reserving question). The district court here had not, in any meaningful sense, made findings on sentencing

issues for it to consider revisiting.[2] Regardless of whether the
First Step Act offers a district court broad or only narrow dis-
cretion, the answer will not depend on § 3582(c)(1)(B).

Indeed, we have found no examples of an appellate court
using the language of § 3582(c)(1)(B) to cabin the district
court's remedial powers under another statute, as the govern-
ment proposes. There is even some authority to the contrary.
S*ee United States v. Triestman*, 178 F.3d 624, 629 (2d Cir. 1999)
(concluding that § 3582(c)(1)(B) does not limit relief available
through habeas corpus petition). When a court grants collat-
eral relief or remands on appeal, resentencing can be either
plenary or limited depending on the court's judgment and the
other statute. *See, e.g.*, *United States v. Adams*, 746 F.3d 734,
743–45 (7th Cir. 2014) (discussing types of remands for resen-
tencing). Section 3582(c)(1)(B) is not part of that calculus.
Again, this conclusion does not separate us from the other cir-
cuits. The Fifth Circuit's reasons for limiting district courts'
discretion had nothing to do with § 3582(c)(1)(B)—which it
did not even cite—and everything to do with the text of the
First Step Act. *Hegwood*, 934 F.3d at 418; *see also Kelley*, 2020
WL 3168518, at *4 (same). Even if one can debate whether the
Fifth Circuit's reading is correct, the answer is in the First Step
Act, not § 3582(c).

---

[2] The government rightly notes that the Guidelines require a district
court to calculate a sentencing range before accepting a sentencing agree-
ment. U.S.S.G. § 6B1.2(c). That did not happen here, but we must take the
record we are given. A First Step Act motion is often "heavily reliant on a
previous explanation and record that was 'not created with the current
statutory framework in mind.'" *Shaw*, 957 F.3d at 741 (quoting *Allen*, 956
F.3d at 358).

## IV. Sutton's Motion

With the procedural vehicle for Sutton's motion identified, we can address the district court's ruling on it.

A district court has broad discretion in addressing a First Step Act motion. The text of the statute provides that a court "*may* … impose a reduced sentence." First Step Act, § 404(b) (emphasis added). The use of "may" is quintessential discretionary language. *E.g., Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931 (2016). If that were not enough, the Act itself makes clear that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." First Step Act, § 404(c); *see also Shaw*, 957 F.3d at 743 ("It is for the district court, in its discretion, to undertake a 'complete review' of [a] motion" under the First Step Act). It follows from the district court's broad discretion that we review the denial of a First Step Act motion for, at most, an abuse of that discretion.

We see no such abuse here. Sutton contends, in his pro se brief, that the government breached the sentencing agreement by opposing his request to be resentenced to his new minimum. The government, though, did not agree to *any* statutory minimum; it agreed to the specific 180-month statutory minimum in play at the time. The parties bargained away litigation risks. The government forfeited its opportunity to convince the court that its higher recommended sentence was warranted because of Sutton's criminal activities, and Sutton gave up the chance to vindicate himself of those activities. At the time, this was a great deal for Sutton. Even if he did prove the government's accusations wrong, he still faced the 180-month minimum to which he had acquiesced. The deal became slightly worse after the First Step Act, as now he had

more to gain (though nearly as much to lose). Still, the court was not obligated to let Sutton have his cake and eat it, too, keeping his 180-month sentence while maintaining his arguments for why it should be lower.

The sentencing agreement also distinguishes this case from the Sixth Circuit's recent decision in *United States v. Boulding*, Nos. 19-1590 & 19-1706, 2020 WL 2832110, at *1 (6th Cir. June 1, 2020). There, the Sixth Circuit found an abuse of discretion in a superficially similar situation: a Guidelines dispute abandoned at the initial sentencing but resolved in the government's favor on a First Step Act motion. *Id.* at *1–2. In Boulding's case, though, his statutory minimum was *life* imprisonment, so he could make only "frivolous objections to sentencing enhancements." *Id.* at *2. Sutton's objections were never frivolous, since the alternative was a longer sentence that might well have remained appropriate to this day. Even if Sutton did not "withdraw" his objections, he chose to leave the dispute unresolved in exchange for the certainty of a 180-month sentence. The district court did not abuse its discretion leaving him to that choice.

## V. Conclusion

We conclude that the proper vehicle for Sutton's motion for a reduced sentence is § 404(b) of the First Step Act. Regardless of the vehicle, however, the district court did not abuse its discretion in denying Sutton's motion. Accordingly, we AFFIRM the judgment.